457 So.2d 547 (1984)
BRADLEY CONSTRUCTION and Southeastern Fire Insurance, Appellants,
v.
Phillip WHITE, Appellee.
No. AX-125.
District Court of Appeal of Florida, First District.
October 9, 1984.
*548 Richard H. Weisberg and John E. McLain, III of Cooper, Rissman, Weisberg & Jeffery, P.A., Orlando, for appellants.
James M. Hess of Driscoll, Langston, Kane & Hess, P.A., Orlando, for appellee.
SMITH, Judge.
The employer/carrier (E/C) challenge two orders of the deputy commissioner issued below. The first order granted the claimant's request that the E/C pay for chiropractic treatment received by claimant in lieu of treatment offered by two physicians authorized by the E/C. The second awarded claimant temporary total disability benefits (TTD) for the period of time claimant was under the chiropractor's care. We affirm.
The claimant suffered a compensable injury, initially diagnosed as a strain of the lumbar region of his back, on December 23, 1982. He was examined at Brookwood Community Hospital in Orlando, Florida, this examination producing essentially normal results. Accordingly, claimant was prescribed a muscle relaxant, Robaxin. Receiving no relief from this treatment, he was referred to Dr. Arslanian in January 1983. Dr. Arslanian reported that the results of his physical and x-ray examinations of claimant were either negative or revealed no significant abnormalities. Consequently, Dr. Arslanian diagnosed claimant's injury as mild paravertebral muscle inflammation, and prescribed a correspondingly mild muscle relaxant, Flexeril. Dr. Arslanian subsequently re-examined claimant on January 17, 1983, and found claimant capable of a full range of motion, flexion, extension, and lateral bending and rotation. In spite of these apparently normal objective findings, claimant continued to voice subjective complaints of pain. For this reason, Dr. Arslanian prescribed Norflex, plus increased rest.
*549 Claimant was again examined by Dr. Arslanian on two separate occasions in February 1983. The results of these examinations as reported by Dr. Arslanian were again unremarkable. At this point, Dr. Arslanian was unable to explain the variance between his objective clinical findings and claimant's subjective complaints of pain, nor was he able to suggest an effective future treatment program. Dr. Arslanian did feel that the claimant was at that time capable of returning to his former job. Even so, Dr. Arslanian requested a second independent medical examination, which was subsequently performed by Dr. Bourguignon on March 24, 1983. Dr. Bourguignon reported that his examination revealed no objective abnormalities. He diagnosed claimant's injury as a pulled muscle of the lumbar spine. Dr. Bourguignon's suggested treatment was two weeks of physical therapy. Dr. Bourguignon stated that he felt that the claimant had been capable of returning to his prior work as of the March 24, 1983 examination.
Claimant was re-examined by Dr. Arslanian on April 25, 1983, who again interpreted the results of his testing of claimant as being within expected norms. As a result of his continued negative objective findings, Dr. Arslanian persuaded claimant to undergo a thermogram test, which was performed on May 5, 1983. Dr. Arslanian reported that the thermogram test results revealed possible nerve root irritation, which he stated is sometimes indicative of soft tissue injury. Since the testing physician stated that the thermogram results did not meet strict criteria for abnormality, Dr. Arslanian interpreted the results as supporting his initial diagnosis as to the extent of claimant's injury. Dr. Arslanian further felt that the claimant had not been making a good faith attempt to follow Dr. Arslanian's treatment plan. As a result, Dr. Arslanian released claimant from his care on June 1, 1983, because he thought it would be futile to attempt to follow the claimant's progress in the future. At this time, Dr. Arslanian testified that he felt that the claimant had reached maximum medical improvement (MMI) and therefore was capable of returning to his prior job.
Claimant, however, continued to complain of pain, and therefore requested, and was granted, a hearing before the deputy commissioner, held August 17, 1983, to request chiropractic treatment. The E/C objected, pointing out that claimant had already been treated by two board-certified physicians who had discharged him from treatment and pronounced him able to return to work. Following the hearing the deputy commissioner, by order dated August 23, 1983, ordered the E/C to provide claimant a chiropractic examination and, if found medically necessary by the examining chiropractor, a maximum of 60 days of subsequent chiropractic treatment.
Claimant was examined by Dr. Exum and underwent treatment for a period of six weeks. Dr. Exum's examination revealed a restricted range of motion in the right lateral flexion of the claimant's cervical and lumbar spine regions. He interpreted x-rays of claimant's injured area as indicating a posterior displacement of the fifth lumbar vertebra and a lateral flexion misalignment at the L-5 lumbar region. Dr. Exum diagnosed claimant as suffering from a misalignment of the L-4/5 vertebra, with accompanying radiculitis, with a secondary diagnosis of sprain/strain complex of the cervical spine with accompanying misalignment. Dr. Exum opined that the claimant had reached MMI on October 3, 1983, and that although claimant, while under Dr. Exum's treatment, had not been capable of performing his previous job-related duties, claimant could "probably" have performed less strenuous work activities. Dr. Exum did not testify whether or not he had so informed claimant of claimant's presumed residual capacity for sedentary-type work activities.
As noted above, there are two orders before us for review. The first, dated August 23, 1983, required the E/C to provide claimant a chiropractic examination, as well as treatment, if necessary. The second order, dated December 22, 1983, granted claimant's request for TTD benefits for the *550 period between August 24, 1983, and October 3, 1983, the time claimant was under the care of Dr. Exum, as well as medical expenses, costs, and attorney's fees. The deputy commissioner specifically credited the opinion of Dr. Exum that the claimant had been incapable of working between August 24 and October 3, 1983. While the deputy commissioner noted the contrary opinions of Drs. Arslanian and Bourguignon, he pointed out that neither physician had treated claimant since June 1983, and thus they would not possess knowledge of claimant's impairments for the contested time period.
The E/C's challenge to the deputy's August 23, 1983, order is based on the judicial gloss given to Section 440.13(1), Florida Statutes (1981), which section provides that an employer shall furnish to an injured employee remedial treatment for such period as the nature of the employee's injury or the process of recovery requires. The E/C points to cases such as Heller Brothers v. Avans, 414 So.2d 1191 (Fla. 1st DCA 1982), which hold that it is error for a deputy to require an E/C to pay for medical examinations and/or treatment where there exists no conflict in the medical evidence of record. The E/C further relies upon decisional language indicating that the rule is not altered by a claimant's subjective complaints of pain; since a mere subjective assertion on a claimant's part cannot create conflict in the medical evidence. Amoco Container Co. v. Singh, 418 So.2d 395 (Fla. 1st DCA 1982), citing K-Mart Corporation v. Nasoni, 377 So.2d 821 (Fla. 1st DCA 1979). Here, the E/C assert, claimant was treated by two board-certified physicians who both released claimant to work as of June 1983, with no restrictions and a finding that claimant suffered from no permanent impairments. We find that the decisions relied upon by the E/C do not mandate reversal here.
Heller Brothers and Nasoni are both distinguishable from the case at bar by the fact that in both of those cases this court found that there were no allegations that the authorized treatment there complained of was inadequate or otherwise inappropriate. Here, on the other hand, the inadequacy of the treatment offered by the E/C was precisely what claimant was contesting. The claimant was not seeking merely additional care in the same type of treatment regime, cf., Commercial Carriers, Inc. v. Porter, 424 So.2d 155 (Fla. 1st DCA 1982), but rather a new mode of treatment altogether. Claimant's perception of the need to seek alternative care was undoubtedly reinforced by Dr. Arslanian's release of claimant from his treatment program in June of 1983, based on Dr. Arslanian's belief that continuing treatment would be futile. In such circumstances, as we acknowledged in Sears, Roebuck and Company v. Viera, 440 So.2d 49, 51 (Fla. 1st DCA 1983) (quoting from the deputy commissioner), Section 440.12(2), Florida Statutes (1981), requires an E/C whose authorized physicians are objected to by a claimant who seeks alternative treatment
to either select a physician to provide such care to the claimant or to seek a ruling from the deputy commissioner that such change in medical attendance would not be in the best interest of the claimant. Failing in same the employer must pay for the requested treatment subject only to the reasonableness and necessity of same.
440 So.2d 49, 51. Here, the E/C offered no alternative care or treatment for claimant, even though he was not, at the times he requested chiropractic care, free of the symptoms for which he initially sought treatment. Instead, claimant himself sought a determination from the deputy commissioner that chiropractic treatment would be in claimant's best interest, following the proper procedure for resolving treatment disputes outlined in Usher v. Cothron, 445 So.2d 387 (Fla. 1st DCA 1984), and Sears, Roebuck and Company v. Viera, supra, at 51.
As previously noted, Dr. Arslanian released claimant from his care for reasons other than claimant's or, for that matter, Dr. Arslanian's satisfaction with the previous course of treatment. Apparently, the deputy concluded that claimant was simply *551 not receiving the relief he sought from the physicians authorized by the E/C. In his December 22, 1983 order, the deputy noted that "there may have been a communication problem between the claimant and Dr. Arslanian." For whatever reason, the care provided claimant by the E/C's authorized physicians had proven unsatisfactory but, as the deputy further found, it was clear that the claimant did improve under Dr. Exum's treatment. While this is after-the-fact evidence, it nonetheless tends to confirm both the necessity for additional care and the soundness of the deputy's handling of this case.
The E/C also challenge the deputy's award of TTD benefits to claimant during the time he was under the care of Dr. Exum, August 24 to October 3, 1983. The E/C cites the opinions of Dr. Arslanian and Bourguignon that claimant was, as of June 1, 1983, capable of returning to work, as well as Dr. Exum's testimony that while claimant was not able to return to past employment he retained the capacity to perform some work during the time period in question. The E/C construes this evidence as indicative of an absence of clear medical evidence establishing TTD, and notes that in such circumstances, a claimant must prove either a good faith work search or the inability to return to work due to disability. Belle v. General Electric Co., 409 So.2d 182 (Fla. 1st DCA 1982). The E/C asserts that no evidence of any work search on claimant's part was adduced below. Finally, the E/C suggest that claimant's "bare complaints of pain and assertions of inability to work" are insufficient to justify an award of TTD benefits where "abundant expert medical opinion" to the contrary exists. Sanlando Utility Corp. v. Morris, 418 So.2d 389, 391 (Fla. 1st DCA 1982). However, the E/C's arguments here are likewise unavailing.
The deputy's award of TTD benefits to the claimant is supported by competent, substantial evidence consisting of Dr. Exum's testimony regarding his examination and treatment of claimant which showed that the claimant was unable to perform work-related activities between August 24 and October 3, 1983. The E/C essentially ask this court to reweigh the evidence introduced below, a task this court steadfastly refuses. Swanigan v. Dobbs House, 442 So.2d 1026 (Fla. 1st DCA 1983). Moreover, we reject the E/C's attempt to impeach Dr. Exum by noting that he, somewhat vaguely, testified that claimant might have been capable of performing certain unnamed less strenuous jobs. The E/C suggest that this testimony negates Dr. Exum's previously-noted opinion of TTD, with the result that no evidence exists in the record below that claimant is totally unable to work, and therefore that a work search by claimant, admittedly not undertaken, is required here. However, the evidence below fails to establish that Dr. Exum informed claimant that he was capable of some work activities or that such less strenuous work activities would be a part of claimant's treatment program, nor that the claimant knew or should have known that he was released for lighter work. Accordingly, a reversal of benefits here cannot rest on claimant's failure to seek work. Daytona Linen Services and Mission Insurance Company v. Davis, 454 So.2d 46 (Fla. 1st DCA 1984); Fulmer-Orlando v. Taylor, 419 So.2d 734, 735 (Fla. 1st DCA 1982).
The orders appealed from are AFFIRMED.
BOOTH, J., concurs.
THOMPSON, J., dissents with written opinion.
THOMPSON, Judge, dissents.
The employer/carrier (E/C) appeal separate orders of the deputy commissioner (deputy) requiring the E/C to pay for the claimant's treatment by a chiropractor and awarding claimant temporary total disability (TTD) benefits during the time claimant was under treatment by the chiropractor. I would reverse.
The claimant sustained a compensable injury December 23, 1982. He was referred to Dr. Arslanian, an orthopedic surgeon, *552 in January 1983. After a thorough examination claimant's injury was diagnosed as a mild paravertebral muscle inflammation. After further testing on January 17, 1983, Dr. Arslanian was of the opinion that despite claimant's continuing subjective complaints of pain he had a full range of motion, flexion, extension, lateral bending and lateral rotation. The claimant was seen and examined by Dr. Arslanian on two subsequent occasions in February 1983 and the doctor reported that he could make no objective findings and was unable to explain claimant's continued complaints of pain or suggest an effective treatment.
Because of claimant's continued complaints of pain Dr. Arslanian requested a independent medical examination. This examination was performed by Dr. Roger L. Bourguignon on March 24, 1983. As a result of his examination Dr. Bourguignon diagnosed claimant's injury as a pulled muscle of the lumbar spine and recommended two weeks of daily physical therapy. Dr. Bourguignon was of the opinion that the type of injury the claimant sustained normally took between six to eight weeks to heal, and he felt that claimant was capable of returning to his prior employment at the time of his March 24, 1983 examination. Claimant was again examined by Dr. Arslanian on April 25, 1983. His tests were still negative and the doctor concluded that the claimant was not making a good faith attempt to follow his treatment plan.
The claimant requested and was granted a hearing before the deputy on August 17, 1983 on his request for chiropractic treatment. The E/C contested the claimant's request asserting that the claimant had already been treated by two board certified physicians who had discharged him from treatment and found him capable of returning to work. The deputy ordered the E/C to provide a chiropractic examination and, if deemed medically necessary by the chiropractor, to provide a maximum of 60 days subsequent chiropractic treatment. The deputy based his order on his factual finding that the claimant continued to have difficulty with his back. He based his finding on the claimant's testimony that he still had back pain and difficulty despite the treatments he had received from Dr. Arslanian and Dr. Bourguignon. The deputy erred in ordering this treatment and in the awarding of attorney's fees to claimant's attorney. An award of an examination and treatment is error absent a conflict in the medical evidence. See Heller Brothers v. Avans, 414 So.2d 1191 (Fla. 1st DCA 1982); K-Mart Corporation v. Nasoni, 377 So.2d 821 (Fla. 1st DCA 1979). The law requires a conflict in the medical testimony and the claimant's testimony of continued pain relied upon by the deputy does not constitute a conflict in the medical testimony. As this court said in Amoco Container Company v. Singh, 418 So.2d 395 (Fla. 1st DCA 1982):
Absent a conflict in the medical evidence, the employer/carrier may not be required to bear the expense of an evaluation by an additional physician based merely on claimant's assertions of continued pain. (emphasis supplied)
In the absence of a conflict in the medical evidence the claimant must demonstrate that such further medical evaluation and/or treatment is reasonably required by the nature of the injury or the process of recovery. No such showing was made in this case.
I would also reverse the award of TTD benefits as there was no evidence that the claimant made a bona fide work search. In Heller Brothers, this court reversed an award of TTD benefits saying:
[T]he Deputy Commissioner erred in awarding temporary total disability absent a showing of a bona fide work search. LeHigh Corporation v. Byrd, 397 So.2d 1202, 1204 (Fla. 1st DCA 1981).
The affirmance by the majority is contrary to the foregoing cited cases which in my opinion require reversal of the orders appealed.