473 So.2d 249 (1985)
CAL KOVENS Construction and United States Fidelity and Guaranty Company, Appellants,
v.
Jacob Lott, Appellee.
No. AZ-316.
District Court of Appeal of Florida, First District.
July 18, 1985.
Rehearing Denied August 20, 1985.
*250 Robert H. Gregory, Miami, for appellants.
Richard A. Sicking of Kaplan, Sicking, Hessen, Sugarman, Rosenthal, Susskind, Bloom & DeCastro, Miami, for appellee.
ZEHMER, Judge.
The employer and carrier appeal from an order of the deputy commissioner requiring the carrier to pay the medical bills of Dr. Rech and the transportation expenses incurred by claimant in traveling to see Dr. Rech after the carrier had deauthorized Dr. Rech effective April 4, 1983. Appellants raise two points on appeal. We affirm.
As to the first issue, the employer and carrier contend it was error for the deputy to enter a de novo order after he had vacated an earlier order which had been entered by a predecessor deputy on her last day in office. The case was assigned to the successor deputy after the employer and carrier filed a petition for rehearing which asserted error by the predecessor deputy in requiring that claimant be seen by a physician (a knee expert) in North Carolina.
The proceedings on the petition for rehearing were not reported, and we have no record thereof. The parties, however, filed a stipulation setting forth what transpired at that hearing. According to the stipulation, counsel agreed at the hearing that the successor deputy could vacate the order, listen to the tape recording of the proceedings held before the predecessor deputy, review the evidence presented, and then enter his order. Nothing in the stipulation purports to preclude the successor deputy from entering his own order on all issues based upon a de novo review of the entire record. Since that is what the deputy did, after vacating the first order pursuant to the stipulation, we are not presented, and therefore do not address, the question of the successor deputy's authority, absent stipulation, to entertain a petition for rehearing of an order entered by a predecessor.
As to the second issue, the employer and carrier contend that the successor deputy erred in not recognizing the validity of the carrier's deauthorization of Dr. Rech. Additional *251 facts are necessary for a full understanding of this issue.
Claimant is a thirty-nine year old construction worker residing in Broxton, Georgia. When work became slack, he went to Miami to work a while with the intention of eventually returning to Broxton, where his family remained. While working for the employer, Cal Kovens Construction, claimant stayed with friends in Opa Locka and would go home on weekends. After working in Miami for eight months, claimant twisted his knee by stepping on a pipe on May 11, 1981. He was treated by Dr. Rech, a Miami orthopedic surgeon designated by the employer and carrier, who performed several surgical procedures over a period of time. Claimant made several trips between his home in Broxton and Miami to be treated by Dr. Rech. Each visit, round trip, involved travel of 1,040 miles, and the carrier paid travel expenses of over $5,000.
The following facts were found by the deputy commissioner and are supported by the record. Dr. Rech had been the authorized treating physician for nearly two years, and both claimant and the employer and carrier were apparently well satisfied with the medical treatment claimant was receiving from Dr. Rech. Dr. Rech had performed three operations on claimant, the latest in February 1983. In March 1983, because of the substantial transportation expenses being incurred for claimant's travel from his home in Georgia for treatment by Dr. Rech in Miami, the carrier notified Dr. Rech, claimant, and claimant's attorney that the carrier was seeking new physicians located closer to claimant's home to treat him and that Dr. Rech would be deauthorized after claimant's scheduled visit on April 4, 1983, to reduce travel expenses. Since claimant had not reached maximum medical improvement and was in need of continued orthopedic treatment, the carrier, on April 12, 1983, selected a group of orthopedic surgeons in Jacksonville and notified claimant and his attorney of their names and addresses. Claimant made inquiry about the carrier's recommended physicians, but was not satisfied they would provide suitable treatment. Three days later claimant's attorney filed a claim, back dated to April 12, seeking to continue medical treatment by Dr. Rech. Service of this claim on the carrier constituted notice that claimant was not accepting the new Jacksonville physicians designated by the carrier. Consequently, claimant continued traveling to Miami for treatment by Dr. Rech.
Although claimant, at the request of the employer and carrier, later went to see another Jacksonville physician, he persisted in his claim to continue treatment with Dr. Rech. Some question was raised about Dr. Rech's referring claimant to a specialist in North Carolina or to a clinic in Columbus, Georgia. The employer and carrier never indicated any dissatisfaction with the medical care being rendered by Dr. Rech, and their decision to deauthorize was based entirely on reducing the transportation expenses involved.
The employer and carrier defended the claim for Dr. Rech's medical bills and the travel expenses incurred after April 4, 1983, on the ground that new physicians in Jacksonville had been authorized to treat claimant and he refused to go to those doctors without notification of a reason for refusal. The deputy commissioner held that the employer and carrier were obligated to pay transportation expenses and medical bills of Dr. Rech for treatment after April 4, 1983, to the date of the order "because there was no determination by the Deputy Commissioner that a change in medical provider was in the claimant's best interest, particularly since the other technical requirements of § 440.13(2), Fla. Stat., were complied with, and the employer/carrier did not object to the treatment being provided, but only to the transportation expenses involved." The deputy commissioner's order determined, at least inferentially, that claimant could not be coerced by the employer and carrier to change from his authorized treating physician to new physicians unacceptable to him absent a showing of good cause sufficient to require a change in medical treatment under section 440.13(2). *252 Obviously the deputy commissioner did not consider the curtailment of travel expenses, alone, to be sufficient good cause, for the deputy's order further stated:
However, I do find that it would [be] in the claimant's best interest in the future, that he have medical care available to him, which is closer to his residence, not because of the transportation expense involved, but because the nature of his injury is such that it would be better for his medical needs to have a physician readily available to provide treatment who is not so far distant. To accomplish this, the parties are advised, in keeping with the self-executing provisions of the Florida Workers' Compensation Law, to agree among themselves as to a suitable physician to provide medical treatment to the claimant closer to his home in the future. Failing that, the parties are free to request a change of physician and apply for a hearing in a manner provided for in § 440.13(2), Fla. Stat.
It is perfectly clear, therefore, that the deputy commissioner ruled that the burden was upon the employer and carrier to obtain an order authorizing the appointment of a specific new treating physician if the claimant objected to the deauthorization and substitution sought to be imposed by the carrier to save travel expenses. Bearing in mind that this is not a case of initial selection of a physician by the employer, but an attempt to deauthorize a treating physician who had been treating claimant since the accident and had performed a third surgery only a month before the unilateral deauthorization, the deputy commissioner quite correctly sought to weigh the carrier's asserted reason for compelling the change of treating physician against the statutory prohibition of coercion of claimant in the selection of a physician, and correctly concluded that the burden was on the employer to demonstrate good cause for the change and that it was in claimant's best interest. The deputy commissioner's ruling follows the proper procedure for accomplishing disputed changes in treating physicians, Bradley Construction v. White, 457 So.2d 547 (Fla. 1st DCA 1984), and is perfectly consistent with previous constructions of section 440.13(2) by this court and the Industrial Relations Commission. Sears, Roebuck & Co. v. Viera, 440 So.2d 49 (Fla. 1st DCA 1983); Gust K. Newburg v. Warren, 449 So.2d 934 (Fla. 1st DCA 1984); Greynolds Park Manor Nursing Center v. Efford, IRC Order No. 2-3348 (1978).
In the Viera case, the employer had authorized a number of orthopedic surgeons and neurologists to treat claimant's lower back injury, but claimant objected to these physicians and requested treatment by a chiropractor. The employer stood firm and did not authorize any chiropractor or alternative care, so claimant proceeded to obtain unauthorized, but successful, chiropractic treatment. At the hearing on the contested chiropractor's fees, the employer argued it was claimant's duty to seek prior authorization from the deputy commissioner since the employer had already authorized treatment by other physicians. Claimant, on the other hand, argued that the employer had the responsibility to go before the deputy when it objected to his request for chiropractic care. The deputy commissioner agreed with claimant's position and, as the court noted,
held that once claimant objected to the services rendered by the authorized physicians and requested alternative care, it was the employer's duty, under section 440.13(2), Florida Statutes (1981),
"to either select a physician to provide such care to the claimant or to seek a ruling from the deputy commissioner that such change in medical attendance would not be in the best interest of the claimant. Failing in same the employer must pay for the requested treatment subject only to the reasonableness and necessity of same."
440 So.2d at 51. The court concluded that the deputy's holding properly coordinated the legislative mandate contained in sub-sections (1) and (2) of section 440.13.
*253 Obviously there are factual differences between Viera and the instant case. But the right to alternative care is sufficiently analogous to the right to continue an existing satisfactory physician-patient relationship that the factual differences are not material distinctions. Viera clearly stands for the proposition that the burden is upon the employer and carrier to obtain an order from the deputy commissioner when they object to claimant's selection of alternatives care and fail to provide other alternatives when claimant refuses those offered. This proposition is but the converse of the requirement that a claimant must first obtain authorization from the deputy commissioner to, so long as care is provided in accordance with the statute, receive treatment by another physician not selected or approved by the employer and carrier. See, e.g., City of Ft. Lauderdale v. Flanders, 416 So.2d 1234 (Fla. 1st DCA 1982), discussed in the Viera case. Simply stated, once the claimant and employer or carrier agree on a treating physician and a satisfactory physician-patient relationship is established, when a change in the authorized treating physician is requested by the employer or carrier and the claimant disputes the change, the employer or carrier, being the party seeking to change the status quo, should obtain an order from the deputy commissioner or incur the risk of a ruling against good cause for the change under section 440.13. As stated in Greynolds Park Manor Nursing Center v. Efford:
Sub paragraph (2) of the statute also provides in substance that the employer must either obtain an order to continue service by an authorized physician to whom employee objects or must provide another physician, with the additional proviso:
"... provided that a judge ... may at any time, for good cause shown ... order a change in such . .. attendance. It shall be unlawful for any employer .. . or insurer to coerce or attempt to coerce a sick or injured employee in the seiection of a physician...."
Whenever an employee objects to the authorized physician, the explicit statutory provisions clearly allow a carrier's termination of that authorization, without an order, and require a proffer of other care. The careful statutory expression of that rule, and its preceding provisions, would by ordinary principles of construction exclude other unilateral substitutions for a previously authorized physician over an employee's objection, until an order for such change is obtained.
IRC Order No. 2-3348, pp. 4-5.
The two decisions cited in the dissent, Deinema v. Pierpoint Condominiums, 415 So.2d 811 (Fla. 1st DCA 1982), and Schult Mobile Home Corp. v. Walling, 384 So.2d 251 (Fla. 1st DCA 1980), do not support a contrary holding; those decisions are not inconsistent with the appealed order. Those cases stand for the proposition that a claimant cannot be awarded payment of medical fees for treatment by an unauthorized physician unless that claimant shows good cause for the selection of that physician in lieu of the selection of physicians made by the employer and carrier. In Walling, it was stated:
Section 440.13 reserves to the claimant the right to dispute the carrier's selection of a treating physician for good cause. Robinson v. Howard Hall Company, 219 So.2d 688 (Fla. 1969). The Deputy Commissioner found, and we agree, that the claimant's dissatisfaction with the carrier's selection of various physicians was for good cause or reason, and therefore, she was fully justified by medical necessity in exercising her right to seek alternative medical care and treatment. [Citations omitted.] Redwing Carriers, Inc. v. Pinto, IRC Order 2-3089 (Jan. 6, 1977), cert. den., 348 So.2d 952 (Fla. 1977), held that there is no requirement in the law that all medical treatment come to a standstill, when the parties have reached an impasse, until the question which doctor shall perform the treatment has been resolved by the Judge.

384 So.2d at 253 (emphasis supplied). In Robinson v. Howard Hall Co., 219 So.2d 688 *254 (Fla. 1969), the Supreme Court first construed the relevant language of section 440.13 to require that a claimant show good cause for not accepting a physician selected by the employer and obtaining unauthorized treatment in lieu of requesting new authorization, and explained its holding with the following comments:
The policy of the statute as we view it is to give the initial right of selection of a treating physician for an injured or sick claimant to employer-carrier, but reserves in claimant the right to dispute such selection for good cause or reason and to seek substitution of that physician by a physician of claimant's choice, pursuant to due determination of the matter by the Judge of Industrial Claims. We analogize this limited right of a claimant as to the initial selection of a physician to be essentially similar to a situation where a claimant desires a change in medical attention already provided him. In the latter situation Section 440.13 provides: `The commission may at any time, for good cause, shown in its discretion order a change * * *.'
We recognize that in certain instances it may be found to be in the best interest of an injured claimant to have the satisfaction of being treated by a physician of his own choosing. The peace of mind of a sick or injured person may be improved and his medical problem remedied to a degree by the knowledge he is being treated by a physician of his choice in whom he places trust and confidence rather than by a physician selected by another for him.
219 So.2d at 691 (emphasis supplied).
It is most important to distinguish between right to veto the employer or carrier's selection of a treating physician and claimant's right to select and insist upon a treating physician not approved or authorized by the carrier. In the latter situation, clearly claimant must show good cause under the holding in Robinson v. Howard Hall Co., 219 So.2d 688. In the former case claimant's right to veto the carrier's selection and compel the carrier to tender another physician is absolute and requires no good cause; otherwise, the guarantee against coercion contained in section 440.13(2) is made a mere sham. The above statement of principles supports, rather than discredits, the deputy's holding below.
Since the employer and carrier sought to deauthorize Dr. Rech while claimant was still in need of medical care and perfectly happy with the treatment he had been receiving, the employer was not free to unilaterally deauthorize Dr. Rech as treating physician until claimant and the employer could agree on a new physician or the dispute was resolved by the deputy commissioner. Nothing in this procedure is inconsistent with the self-executing philosophy of the Workers' Compensation Act.
The deputy commissioner concluded that claimant's desire to continue treatment with Dr. Rech, claimant's discovery from a trusted and reliable source of negative information regarding the physicians selected by the employer, and the employer's failure to provide alternative care immediately upon claimant's rejection of the new physicians was sufficient good cause to find that it was in claimant's best interest to disapprove the employer's deauthorization of Dr. Rech as of April 4, 1983. Whether claimant demonstrated good cause for the continued authorization of Dr. Rech and whether such authorization was in claimant's best interest are questions of fact, not law, which are best left to the determination of the deputy commissioner, who is most familiar with the parties and issues involved. Robinson v. Howard Hall Co., 219 So.2d at 692. Appellants have failed to show any lack of competent substantial evidence or abuse of discretion requiring reversal of the order.
AFFIRMED.
WENTWORTH, J., concurs.
NIMMONS, J., dissents with written opinion.
NIMMONS, Judge, concurring in part and dissenting in part.
I concur with the majority's opinion insofar as it holds that the successor deputy *255 was authorized, pursuant to the stipulation, to vacate his predecessor's order and to enter his own order based upon his review of the entire record of the proceedings. However, I disagree with the majority's affirmance on the second issue as I do not believe that the successor deputy's award is supported by the record.
In my view, the deputy's order and the majority's affirmance reward an uncooperative and uncommunicative claimant and unduly penalize a carrier which conscientiously attempts to furnish proper medical care while making reasonable efforts to avoid substantial wasteful costs in providing such care.
On March 15, 1983, the claimant had a conversation with a carrier claims representative who expressed concern over the mounting transportation expenses resulting from travel of 1,040 miles for each visit by this Broxton, Georgia, resident to Dr. Rech in Miami. The claimant stated that he would be willing to see a doctor in either Jacksonville or Tallahassee.[1]
Consequently, on March 16, 1983, the carrier advised Dr. Rech and the claimant in writing that he would no longer be authorized to treat the claimant beyond his next appointment which was scheduled for April 4. The carrier advised that it would arrange for the services of another physician closer to the claimant's home. The claimant did see Dr. Rech on April 4 and the carrier paid for such visit as well as the claimant's transportation expenses.
The carrier's representative called Dr. Rech's office on April 11 and learned that the claimant had not yet reached maximum medical improvement and would need to continue to be followed by an orthopedic doctor. On the same day, the carrier's representative received a call from claimant's attorney's office and was advised that claimant's attorney was looking for a doctor near claimant's home. The carrier's representative told him that the carrier was already doing that. On the following day, April 12, the carrier sent a letter to boardcertified orthopedic surgeons, Todd, Brown and Dyer, of Jacksonville, advising that they were authorized to treat the claimant. The claimant and his attorney were furnished copies of the letter which also requested the claimant to contact these new doctors "for any medical assistance he might need."
The claimant's attorney filed a claim on April 15, 1983, (dated April 12) claiming entitlement to continued authorization of Dr. Rech, costs and attorney's fees. On April 22, the carrier sent a letter to the claimant's attorney advising that an appointment had been arranged for claimant to see Drs. Todd, Brown and Dyer on May 6, 1983. The letter included the address and telephone number of the doctors and also advised that the carrier would furnish all rehabilitation benefits to which the claimant might be entitled. The claimant did not show up for that appointment nor did he call for another.
On May 13, the carrier sent a letter to the claimant's attorney advising that the claimant failed to keep the scheduled appointment and that another appointment had been arranged with the Jacksonville doctors on June 2. This was likewise ignored by the claimant.
The first time the claimant indicated to E/C why he had ignored the medical appointments with the Jacksonville doctors was when his deposition was taken preparatory to the hearing before the deputy. He testified on deposition that his aunt, who is a nurse in Jacksonville, told him that they "didn't have satisfactory service." He also testified that he would otherwise have been willing to see a Jacksonville doctor.
The day before the August 17, 1983, hearing, the carrier advised the claimant, by letter to his attorney, that an appointment with another Jacksonville orthopedic surgeon, Dr. Pujades, had been scheduled. At the hearing, the claimant testified that *256 he would not object to seeing Dr. Pujadas "if he's got a good report on him."
Throughout the period subsequent to the E/C notification of deauthorization, the claimant continued to travel to Miami to see Dr. Rech. There were approximately five such visits after the April 1983 deauthorization of Dr. Rech. The claimant, according to his testimony, would drive ten or twelve hours, spend thirty minutes at Dr. Rech's office and then drive ten or twelve hours back home.
Dr. Rech testified that another orthopedic surgeon could have effectively followed the claimant subsequent to Rech's deauthorization. Also, the claimant testified that the long drives to and from Miami caused him pain and discomfort. And, in fact, the deputy, although rejecting the carrier's purported deauthorization of Dr. Rech and its attempts at having the claimant followed by other physicians in Jacksonville, recognized in his order that it would be in "the claimant's best interest in the future that he have medical care available to him, which is closer to his residence."
The deputy, in ruling against the employer/carrier's deauthorization of Dr. Rech, found Section 440.13(2), Florida Statutes (1982 Supp.), controlling:
(2) If an injured employee objects to the medical attendance furnished by the employer, it shall be the duty of the employer to select another physician to treat the injured employee unless a deputy commissioner determines that a change in medical attendance is not for the best interests of the injured employee; however, a deputy commissioner may at any time, for good cause shown, in the deputy commissioner's discretion, order a change in such remedial attention, care, or attendance. It shall be unlawful for any employer or representative of any insurance company or insurer to coerce or attempt to coerce a sick or injured employee in the selection of a physician, surgeon, or other attendant or remedial treatment, nursing or hospital care, or any other service that the sick or injured employee may require; and any employer or representative of any insurance company or insurer who violates this provision is guilty of a misdemeanor of the second degree, punishable as provided in s. 775.082 or s. 775.083.
The deputy read the above section to require that the E/C obtain an order permitting a change in treating physicians. I disagree.
Where there is, as here, an obvious legitimate reason for making different arrangements for the furnishing of ongoing medical care for the claimant and where the claimant's medical needs can be adequately accommodated by the alternative care arranged by the employer/carrier, the E/C should not have the burden of seeking an order of the deputy, particularly where, as here, the claimant has indicated a willingness to accept such alternative care. Indeed, such would be contrary to the self-executing philosophy which is supposed to underpin the present workers' compensation law. Self-execution depends not only upon the employer/carrier's vigilance and sensitivity to the needs of the injured worker and the E/C's affirmative statutory obligations relative thereto, but also upon the worker's willingness to cooperate with the E/C in the latter's efforts to provide needed professional services while avoiding substantial wasteful costs.
Under circumstances such as those in the instant case, the burden was on the claimant to accept the alternative medical care offered by the E/C or to advise the E/C of some legitimate reason why the doctors offered were not acceptable in which case the E/C should select another physician. Cf. Deinema v. Pierpoint Condominiums, 415 So.2d 811, 813 (Fla. 1st DCA 1982); Schult Mobile Home Corp. v. Walling, 384 So.2d 251 (Fla. 1st DCA 1980). I would hasten to add that the E/C in a sense was acting at their peril in, without the deputy's advance approval, deauthorizing Dr. Rech in favor of physicians closer to claimant's home. That is to say, if the deputy were to properly determine, after the fact, that the claimant's recovery would *257 be ill-served or impaired by the change in physicians, the deputy would be required to make an award against the E/C for the charges of the deauthorized physician, necessary transportation expenses and attorney's fees.
I would reverse on the second issue.
NOTES
[1] According to Dr. Rech, the claimant could have effectively been followed by another orthopedic doctor.