# FIRST DISTRICT COURT OF APPEAL
# STATE OF FLORIDA

_____

No. 1D17-3926

_____

MARINE MAX, INC., and
SEABRIGHT INSURANCE
COMPANY, et al.,

Appellants,

v.

CHARLES BLAIR,

Appellee.

_____

On appeal from an order of the Judge of Compensation Claims.
Diane B. Beck, Judge.

Date of Accident: October 22, 2010.

March 7, 2019

WINSOR, J.

This case requires us to consider what happens when a workers' compensation claimant seeks care from a doctor who—as a condition of continued treatment—demands compensation above and beyond the statutory limits. Marine Max, Inc., and its workers' compensation insurer (collectively, "Marine Max"), appeal an order directing them to "authorize and pay" a doctor who not only demanded compensation beyond limits the Legislature imposed but also demanded those payments in advance. We affirm in part and reverse in part.

Charles Blair was injured when he fell off a ladder in 2010. Marine Max treated the accident as compensable, and it authorized Dr. Jonathan Yunis to provide treatment. Yunis operated on Blair several times between 2010 and 2014, when Yunis practiced with an outfit called Vascular Associates. Some of Yunis's services during this time were billed at statutory rates, and some were billed at higher rates. There were apparently no payment disputes.

In 2015, Yunis left Vascular Associates to start his own practice, the "Center for Hernia Repair." Later, in 2017, Blair sought additional treatment, still relating to the original accident. He filed a new petition for benefits, asking to return to Yunis for a new round of treatment. Unaware of Yunis's departure from Vascular Associates, the insurance adjuster told Blair he was authorizing follow-up treatment with Yunis. The adjuster then contacted Vascular Associates to set up an appointment. That is when the adjuster learned that Yunis no longer worked there. And when the adjuster contacted Yunis's new practice—still trying to make an appointment for Blair—he learned that the new practice required payments beyond the statutory rates. He also learned that the new practice required those above-statutory-rate amounts paid in advance.

Marine Max found the new terms unacceptable. There is no indication that Marine Max tried to negotiate with Yunis's new practice or that negotiations could have been successful.[1] Instead, Marine Max sought a doctor willing to work on acceptable payment terms. In its formal response to Blair's petition, Marine Max stated that because Yunis would not accept statutory rates, it was authorizing treatment with another physician. The adjuster then scheduled an appointment for Blair to see that other physician, but on counsel's advice, Blair refused to go.

---

[1] Yunis did at one point testify that he would treat Blair for free "[i]f he was now abandoned on the street with no insurance and nobody to pay for anything," but Blair's situation never came to that. Yunis did not treat Blair (for free or otherwise), which is why this litigation continues.

The matter then went before the judge of compensation claims. Blair argued that he had an existing patient-physician relationship with Yunis and that Marine Max could not interfere with that relationship by "deauthorizing" Yunis without statutory authority. *See generally City of Bartow v. Brewer*, 896 So. 2d 931, 933 (Fla. 1st DCA 2005). And according to Blair, the statute permits deauthorization only if the claimant is not making appropriate progress in recuperation, *see* § 440.13(2)(d), Fla. Stat., or if the provider was engaged in a pattern or practice of overutilization, *see* § 440.13(8)(b)2. A provider's outright refusal to accept the fee schedule, Blair continues, does not justify deauthorization.

Marine Max responded that payments beyond statutory rates are allowed only if the employer agrees to pay the higher amount and the provider "specifically agrees in writing to follow identified procedures aimed at providing quality medical care to injured workers at reasonable costs." *See* § 440.13(13)(b), Fla. Stat. According to Marine Max, because it had no agreement with Yunis, it was left with only one real option: to provide medically necessary care—as section 440.13(2)(a) required—by authorizing someone else. *Cf. Leon v. CSB Services, Inc.*, 219 So. 3d 166, 167 (Fla. 1st DCA 2017) (holding that authorization of new doctor is required when previous doctor "is no longer a viable option").

The JCC agreed with Blair and held that Marine Max's actions were "tantamount to a unilateral deauthorization." *See generally Brewer*, 896 So. 2d at 933. It noted that "[a]ny dispute as to the applicability of the charges is within the exclusive preview of [the Department of Financial Services]" and that Marine Max "may still dispute the charges even if prepayment is required and made." The JCC then ordered Marine Max to "continue to authorize and pay Dr. Yunis." That led to this appeal.

First, Marine Max correctly argues that the JCC had no authority to order it to *pay* Yunis. Blair acknowledges as much; his counsel noted at oral argument that "the judge probably made a minor mistake" by including "the portion of the order that says 'pay.'" *See also* Ans. Br. at 12 ("[T]he JCC does not have the statutory authority to force the E/C to pay for medical services in excess of fee schedule."). Reimbursement is handled under section

440.13(7), Florida Statutes, and all reimbursement disputes fall under the exclusive jurisdiction of DFS. *See* § 440.13(11)(c), Fla. Stat. (stating that DFS "has exclusive jurisdiction to decide any matters concerning reimbursement"); *see also Cook v. Palm Beach Cty. Sch. Bd.*, 51 So. 3d 619, 620 (Fla. 1st DCA 2011) (holding JCCs lack jurisdiction over payment disputes); *Orange County v. Willis*, 996 So. 2d 870, 871 (Fla. 1st DCA 2008) (holding claimant "did not have standing to enforce payment of the doctor's bill"). Moreover, even if the JCC could resolve payment disputes, it could not compel prepayment, which chapter 440 does not contemplate for medical treatment. The relevant statutes and rules use the term "reimbursement," *see, e.g.*, § 440.13, Fla. Stat. (using the words "reimburse" and "reimbursement" forty-seven times); Fla. Admin. Code R. 69L-7.020 ("A carrier will reimburse a health care provider either the [statutory fee schedule] or a mutually agreed upon contract price."), which is distinct from advance payment.[2] Although the dissent would affirm the order in its entirety (including the prepayment requirement), we struggle to identify any basis on which we could do so. We must reverse the order on appeal to the extent it compels payment.

We still must determine, though, whether the JCC was correct to order Yunis's continued authorization. We conclude that it was. The only basis Marine Max offered to justify its doctor substitution was Yunis's insistence on particular financial terms. But a JCC's award of medically necessary care "is to be made without regard to

---

[2] The JCC was also wrong in assuming Marine Max could prepay the demanded amounts and later seek relief through administrative channels. The administrative dispute process begins with an employer's refusing to pay a provider's bill (or refusing to pay it in full), called "disallowance" (or "adjustment"). *See* § 440.13(6), (8), Fla. Stat. But if Marine Max paid in advance as a condition of service, Yunis would have no occasion to submit a bill afterward. Moreover, section 440.13(7)(a)—which previously allowed both employers and providers to initiate reimbursement disputes at DFS—changed in 2016. It now allows only health care providers to initiate those proceedings. Ch. 16-56, § 4, at 496, Laws of Fla. So there is no entry point for an employer that prepaid too much.

4

the possibility that a payment dispute might arise between the employer and the provider." *Tiznado v. Orlando Reg'l Healthcare Sys.*, 773 So. 2d 584, 585-86 (Fla. 1st DCA 2000). The JCC was therefore required to determine whether Yunis's continued authorization was "reasonable" and "medically necessary," *see* § 440.13(2)(a), Fla. Stat., without considering the possibility (or even probability) that Yunis and Marine Max would never reach agreement on terms. The JCC found that Blair had established a satisfactory patient-physician relationship with Yunis, and that Marine Max had "not established a valid reason for deauthorization of Dr. Yunis under these circumstances." These conclusions were supported by competent substantial evidence. We therefore must affirm the order to the extent it requires Yunis's continued authorization.

Marine Max contends it is illogical to require continued authorization of a doctor unwilling to treat the claimant on statutory terms. That point is not without force, but the law limits the bases on which an employer may officially deauthorize a previously authorized physician. Ordinarily a claimant unable to receive care from the authorized physician (because of payment disputes or otherwise) might seek a new authorized physician, *cf., e.g., Leon*, 219 So. 3d at 167 (noting that claimant appealed denial of new authorized treater after old authorized treater was "henceforth unwilling to treat" claimant), but Blair has resisted that approach, and it is not up to us to weigh the usefulness of his demand for Yunis's continued authorization.

Nevertheless, it may well turn out that the continued authorization does not help Blair, assuming Yunis remains unwilling to provide treatment within the statutory compensation limits and Marine Max remains unwilling to pay beyond the statutory compensation limits (or to pay in advance). Authorization cannot help a claimant who remains untreated, and it should go without saying that neither Marine Max nor any judge of compensation claims can *force* Yunis to provide treatment he does not wish to provide. Marine Max can (and must, for now) continue to "authorize" Yunis, but all authorization does is allow Yunis to demand compensation if he chooses to treat Blair. *See* § 440.13(3)(a), Fla. Stat. ("As a condition to eligibility for payment under this chapter, a health care provider who renders services

5

must receive authorization from the carrier before providing treatment."). If Yunis elects to provide treatment, his authorization will permit him to seek compensation under Chapter 440. *See id*. § 440.13(13)(a) (noting that authorized providers "have recourse against the employer or carrier for payment for services rendered in accordance with this chapter"). If he and Marine Max reach a different agreement, he can operate under that agreement. *See id*. § 440.13(13)(b). But if he remains unwilling to proceed under the system the Legislature created (with its attendant limitations on compensation, *see, e.g.*, *id*.), no employer can force him to do otherwise. On the other hand, if Blair concludes that any ongoing refusal to treat means Yunis "is no longer a viable option," Blair can seek authorization of a replacement physician, *see Leon*, 219 So. 3d 167—a remedy Marine Max has already pursued for Blair. *Cf. also Lewis v. Town & Country Auto Body Shop*, 447 So. 2d 403, 406 (Fla. 1st DCA 1984) ("[I]f the authorized physician declines to see him further, claimant is entitled to have another physician authorized to provide such medical care.").

We have not, of course, overlooked this court's cases recognizing the importance of the physician-claimant relationship. *See, e.g., Stuckey v. Eagle Pest Control Co., Inc.*, 531 So. 2d 350, 351 (Fla. 1st DCA 1988); *Cal Kovens Constr. v. Lott*, 473 So. 2d 249 (Fla. 1st DCA 1985). But none of those cases holds that an employer must prepay above-schedule rates to avoid a potential disruption of that relationship. Although the dissent never explicitly says so, its contrary rule must be that employers have no choice but to prepay above-scheduled rates providers demand, at least until a judge thinks the providers' demands have gone too far.[3] But the Legislature—not DCA judges—decides the

---

[3] To the extent the dissent's conclusion relies on some estoppel concept, we note that estoppel is an affirmative defense that must be asserted below, *see, e.g., Teco Energy, Inc. v. Williams*, 234 So. 3d 816, 823 (Fla. 1st DCA 2017) (noting that estoppel is an affirmative defense that "must be plead carefully or forever waived"), *reh'g denied* (Feb. 5, 2018)—and that Blair did not plead estoppel below, made no estoppel argument below, and does not argue estoppel here. Indeed, as Blair acknowledges in his brief,

permissible range of rates. And the Legislature has said that "[f]ees charged for remedial treatment, care, and attendance, . . . may not exceed the applicable fee schedules adopted under this chapter and department rule." § 440.13(13)(b), Fla. Stat. We therefore must reverse the order to the extent it commands Marine Max to pay fees that *do* "exceed the applicable fee schedule." *Id.*

AFFIRMED in part and REVERSED in part.

JAY, J., concurs; WOLF, J., concurs in part and dissents in part with opinion.

––––––––––––––––––––––––

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

––––––––––––––––––––––––

---

"[t]he requirements of estoppel are not relevant to the outcome of this case." Ans. Br. at 32.

7

WOLF, J., concurring in part and dissenting in part.

I concur in the portion of the majority opinion that requires continued authorization for Dr. Yunis to treat the Claimant because the Employer/Carrier (E/C) failed to prove a valid reason for not continuing to provide treatment with the authorized doctor. I dissent from the portion of the opinion that determines even though Dr. Yunis is authorized, the Carrier is not necessarily required to provide the treatment and the E/C may yet again designate an alternative physician.

The majority essentially frames the issue in this case as, "what happens when a workers' compensation claimant demands that an employer 'authorize' a doctor who is unwilling to provide treatment for rates within statutory limits." The issue in this case, however, is whether an E/C should be required to *continue* medically necessary treatment with an authorized physician when the carrier has *failed to prove any change of circumstance that would justify a de facto deauthorization* of the treating physician.

The majority's statement of the issue switches the focus of the inquiry to an issue that we should not address in this case.

The change in focus leads the majority to reach the remarkable conclusion that the Claimant won the right to have a designation of "authorized" placed by Dr. Yunis's name, even though the Claimant still cannot receive treatment from the physician because the JCC cannot require the Carrier to pay the physician. This renders the opinion meaningless. Under the facts of this case, I would hold that the Carrier is required to continue to provide treatment with Dr. Yunis, regardless of Dr. Yunis' willingness to provide treatment for rates within the statutory limits because that issue is not properly before us.

### Facts

In addition to the facts stated in the majority opinion, I believe the following facts are significant and dispositive of this case:

1. The Carrier initially authorized Dr. Yunis in 2010.

2. Claimant received treatment from Dr. Yunis from 2010 through 2014.

8

3. The fee agreement between the E/C and Dr. Yunis was introduced into evidence and indicated that the E/C agreed to pay Dr. Yunis in excess of the fee schedule for services including non-operative regular visits.

4. Dr. Yunis testified that he has never accepted the fee schedule.[4]

5. No evidence was introduced concerning what fees Dr. Yunis was presently seeking. Thus, there is no proof that Dr. Yunis was seeking fees that were any higher than what the E/C previously paid.

6. In fact, Dr. Yunis's office manager indicated that she offered to provide the doctor's fee schedule for the E/C's review, but there is no indication that her offer was accepted.

7. In addition, when Dr. Yunis asked the Carrier during his deposition if it wanted him to accept the Carrier's fee schedule, the Carrier said all we want to know is whether you take the fee schedule or not.

8. Between 2014 and 2017, a new servicing agent began representing the E/C.

9. The JCC found there has been no negotiation by the Carrier regarding the fees, and "[t]he only reason for not deviating from the fee schedule at this point is because there is a new third party administrator and owner of Sea Bright, and they don't want to *anymore*." (emphasis added). This finding is supported by the evidence adduced in this case.

---

[4] While the adjuster testified that the E/C had previously paid Dr. Yunis for some services in accordance with the fee schedule, the specific services were not identified and this testimony was obviously not accepted by the fact finder, the JCC. In addition, there is no evidence that Dr. Yunis would not provide these services for the same fee that he previously had been charging.

10. The E/C's only asserted defense to deauthorization was, "Dr. Yunis is no longer accepting workers' compensation fee schedule," a defense that is belied by the uncontradicted evidence that Dr. Yunis has never taken the fee schedule.

11. The E/C did not raise the issue of prepayment as a defense, and the statute does not specifically prohibit it.

12. There is no indication in the record that the Carrier ever attempted to negotiate with the doctor.

13. Claimant made a request for medically necessary treatment at the beginning of 2017 and has not to this date received treatment with his authorized doctor. The only doctor authorized by the Carrier was over an hour and a half drive away from Claimant's home and work.

### Import of Existing Statutory Law and Case Law

The majority opinion fails to recognize the *significance* of over 30 years of continuous decisions from this court recognizing the importance of providing a continued course of treatment once a satisfactory patient-physician relationship is established.

As early as 1985, in *Cal Kovens Construction v. Lott*, 473 So. 2d 249 (Fla. 1st DCA 1985), this court recognized the importance of the physician-claimant relationship and emphasized the burden was on the carrier to show good cause sufficient to require a change in ongoing medical treatment.

In *Stuckey v. Eagle Pest Control Co., Inc.*, 531 So. 2d 350, 351 (Fla. 1st DCA 1988), we stated, "[O]nce an injured employee establishes a satisfactory physician-patient relationship with an authorized physician, the E/C may not deauthorize that physician without the employee's prior agreement or without approval of a [JCC] . . . . In this situation the focus should be on the question of why an authorized physician should no longer provide care, thereby severing an established physician-patient relationship." *Stuckey* specifically stated that "the *E/C must then show* good cause for such action." *Id.* (emphasis added). Thus, the E/C bears the burden of demonstrating good cause to sever an existing patient relationship. The opinion fails to recognize that under

10

statutory law and case law, the E/C has a significant burden to demonstrate a change of facts that provide a legal reason for severing the physician-patient relationship.

While section 440.13, Florida Statutes, has been amended so that it no longer requires prior approval from the JCC to deauthorize a doctor, the underlying premise that the E/C cannot deauthorize a physician without proving that doing so is in the best interest of the claimant is still controlling. *Terners of Miami Corp. v. Busot*, 764 So. 2d 701 (Fla. 1st DCA 2000); *see also State Attorney v. Johnson*, 770 So. 2d 187 (Fla. 1st DCA 2000) (recognizing statute did not change the substantive test for deauthorization). In fact, we recently recognized the failure to continue to provide treatment to the claimant with a previously authorized doctor constituted a de facto "deauthorization," and the failure of the carrier to prove a statutory reason for deauthorization meant the E/C was required to continue to provide the sought-after treatment. *See Hernandez v. Hialeah Solid Waste Dep't*, 238 So. 3d 418 (Fla. 1st DCA 2018); *see also Williams v. Triple J Enters.*, 650 So. 2d 1114 (Fla. 1st DCA 1995).

The present statutory framework also recognizes the importance of the physician-patient relationship by only allowing the employer "to transfer the care of an injured employee from the attending health care provider if an independent medical examination determines that the employee is not making appropriate progress in recuperation." § 440.13(2)(d), Fla. Stat. This statutory burden was unmet by the carrier in *Hernandez,* and it was unmet by the E/C here.

**Sufficiency of the Evidence and Issue to be Decided**

While the majority indicates that a doctor's failure to accept the fee schedule may be considered a refusal to treat, thus justifying deauthorization, it is unnecessary for us to reach that specific issue in this case. Here, the E/C failed to prove any change of circumstance, including any increased fee requirement, that might justify a de facto deauthorization of the doctor.

The written agreement for treatment in this case establishes that the previous third party administrator had been paying Dr. Yunis in excess of the fee schedule. There was not one shred of

evidence presented that his present fee schedule was one penny more than what had previously been paid. In fact, the evidence demonstrates that the Carrier did not accept a copy of the doctor's fee schedule when the doctor offered it and made no effort to negotiate with the doctor to preserve the physician-claimant relationship. The JCC specifically found the only reason for the E/C's deauthorization was that the new third party administrator no longer wished to deviate from the fee schedule. This is not a valid reason for de facto deauthorization. Thus, it is unnecessary for us to reach the issue as it is framed by the majority.[5]

## What is the Guidance on Remand?

As previously stated, the majority opinion finds that the doctor is authorized but the Carrier does not have to pay him.

Based on the majority's decision, the JCC, the Claimant, and the E/C are left guessing at what the next step is in this case. No practical relief has been granted to the Claimant.

If the Claimant wishes to treat with Dr. Yunis, his authorized physician, and the E/C refuses to set up an appointment with the authorized doctor, the Claimant is back to square one. He cannot see his treating physician because the E/C will not set up an appointment. The E/C is left guessing whether they need to set up an appointment with Dr. Yunis or whether they can continue to deny treatment (because they are not required to pay) and potentially subject themselves to a new petition for benefits with associated penalties and fees.

In addition, the majority implies that the E/C is free to take the same action it previously took, refusing to authorize a new doctor, because Dr. Yunis failed to take the fee schedule. The E/C has already lost on this issue. The doctrines of law of the case and res judicata apply to workers' compensation cases. *Boynton Landscape v. Dickinson*, 752 So. 2d 1236 (Fla. 1st DCA 2000); *S.*

---

[5] It is up to a later panel of this court or the Legislature to address situations where there is an initial refusal to treat within the fee schedule or where there is evidence that a doctor has raised his or her fees over and above the amount previously agreed to between the E/C and the doctor. That is not the case here.

*Bell Tel. & Tel. Co. v. Blackstock*, 419 So. 2d 360 (Fla. 1st DCA 1982). Absent new evidence that could not have been discovered prior to the last hearing, the E/C should not be allowed to take the same actions that the JCC already found to be unjustified.

The Claimant should not be forced to accept the E/C's refusal to pay Dr. Yunis where a JCC heard all the evidence and found there was no valid reason for de facto deauthorization and that such action was not in the best interest of the Claimant. The JCC specifically stated:

> 24. The only reason for [the E/C] not deviating from the fee schedule at this point is because there is a new third party administrator . . . , and they don't want to anymore.

The JCC additionally found that it was in the best interest of the Claimant to continue to see Dr. Yunis. In Factual Finding #3, the JCC found:

> 3. Claimant testified that he was authorized to treat with Dr. Yunis for his hernia condition and Dr. Yunis has performed three surgeries for his condition. Claimant tried to get a follow up appointment in the past year with Dr. Yunis and could not. He is concerned about his condition. Claimant understands that E/C has offered a doctor in St. Petersburg, Florida but he does not agree with a transfer to that doctor. He was told not to attend that appointment. Claimant said he does not receive pay when he takes off work and he lives in Sarasota, Florida where Dr. Yunis' office is located. He is comfortable with Dr. Yunis and does not want a new doctor.

The Claimant should be free to enforce the JCC's determination that Dr. Yunis is still authorized. Any assertion in the majority opinion indicating otherwise is mere dicta.

### Necessary Medical Care Should be Provided Notwithstanding Potential Disputes Regarding Cost of Treatment

The JCC and the majority each address the potential remedies for the E/C if they still have a problem with Dr. Yunis's fee schedule. They reach opposite conclusions: the JCC found that the

E/C may pursue administrative remedies, and the majority indicated that the statute does not contemplate a remedy for the E/C under these circumstances. This question of a fee dispute is not properly before us, and any discussion concerning potential outcomes in a future dispute should not have been included in either the JCC's order or the majority opinion.[6] As previously stated, this case is only about the ability to get continued treatment with the authorized doctor. The E/C-physician dispute is an inappropriate consideration in determining whether the Claimant is entitled to continued medical treatment. If there is a lack of remedy for the E/C, that should be addressed by the Legislature, not this court.

In *Tiznado v. Orlando Regional Healthcare System*, 773 So. 2d 584, 586 (Fla. 1st DCA 2000), we specifically determined that where the care is medically necessary, "medical care should have been awarded" notwithstanding a potential payment dispute that might arise.

In this case, the JCC was simply requiring the E/C to pay for the care that the Claimant was entitled to receive. Such a decision is consistent with our case law. *See Williams*, 650 So. 2d 1114 (requiring payment to Claimant for necessary medications notwithstanding potential utilization review).

The E/C's order to pay for the treatment did nothing more than require provision of treatment. The JCC did not order a specific amount be paid. In addition, we are not looking at reimbursement or overutilization. The JCC simply addressed the

---

[6] The majority appears to be concerned that the E/C has no remedy. While I am unsure whether I agree with this analysis, if there is a statutory gap that fails to provide the E/C a proper remedy, that is for the Legislature to fix and not a valid reason for this court to disrupt the existing physician-claimant relationship. In addition, in light of the findings concerning the Carrier's failure to negotiate, it is unclear to me that any claim by the E/C was not waived or is indeed premature.

issue in this case, continued treatment with an authorized physician.[7] I would affirm this order in its totality.

_____

Robert B. Griffis of Jones, Hurley, and Hand, P.A., Orlando, for Appellants.

Kimberly A. Hill of Kimberly A. Hill, P.L., Ft. Lauderdale, and Eric M. Christiansen of Lancaster & Eure, P.A., Sarasota, for Appellee.

---

[7] If Dr. Yunis attempts to raise his fees in the future to an amount greater than the fees he is presently willing to accept, this would constitute new circumstances that may allow the E/C to properly raise the issue as framed by the majority. As previously stated, it is the failure of proof by the E/C that precludes us from addressing the issue in this case.