532 So.2d 37 (1988)
Gertrude TEIMER, Appellant,
v.
PIXIE PLAYMATES and Cigna, Appellees.
No. 87-1502.
District Court of Appeal of Florida, First District.
September 23, 1988.
*38 John H. Thompson, IV, of Earle & Thompson, St. Petersburg, for appellant.
Mark E. Hungate of Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., St. Petersburg, for appellees.

SUBSTITUTED OPINION
JOANOS, Judge.
Pursuant to the court's own motion, our original opinion is withdrawn and the following is substituted.
Claimant, Gertrude Teimer, has appealed the final order of the deputy commissioner which denied payment of bills for past and future chiropractic care. The following issues were raised for our review: (1) whether there is competent substantial evidence to support the deputy's rejection of claimant's testimony that she was forced to be initially treated by chiropractor Balduf; (2) whether the employer and carrier, once placed on notice that claimant desired chiropractic care, were statutorily obligated to authorize chiropractic care, and (3) whether the denial of future chiropractic care was proper based upon the finding that past chiropractic treatment had only provided temporary relief. We affirm the deputy's order on point 1, and reverse and remand on points 2 and 3.
Claimant Teimer is a 50-year-old seamstress with a tenth grade education. She was treated by Dr. Balduf, her chiropractor, for back problems as far back as 1974. On April 25, 1986, in the course and scope of her employment, she sustained an injury to her lower back. Shortly thereafter, she reported this injury to her supervisor, Ms. Chapman, and stated that she was going to seek chiropractic care and would return in an hour. Claimant knew the company policy that injuries sustained in on-the-job accidents were to be treated by the company medical doctor, whose office was within walking distance of the work location, but instead desired chiropractic care. Her supervisor advised claimant that she must first go to the company medical doctor, Dr. DeCandido, but claimant sought only chiropractic care from her familiar chiropractor, Dr. Balduf.
Dr. Balduf initially hesitated to treat claimant upon her arrival at his office for when he contacted the employer to obtain authorization, he was advised that appellant would have to first see the company medical doctor. However, the chiropractor found claimant to have acute back pain, and considering it an emergency situation, treated her at his office where she remained immobile from 10 a.m. to 6 p.m. Claimant's husband came to drive her home because she could not drive. She remained in bed for the next week, and was attended in her home by Dr. Balduf.
On April 28, 1986, the supervisor again advised appellant that she would have to see the company medical doctor. Appellant explained to the supervisor that she saw chiropractor Balduf because he would come to her house to provide her with treatment, and she was unable to go out to obtain *39 treatment. She further explained to her supervisor that if Dr. DeCandido would come to her home, appellant would be happy to see him also. On May 5, 1986, when appellant was able to ambulate, she went to see Dr. DeCandido, the company doctor, as required. Dr. DeCandido hospitalized claimant for ten days and prescribed anti-inflammatory pills, muscle relaxers and pain pills, as well as physical therapy. Claimant refused to take the muscle relaxers or pain pills, fearing their effects.
On June 3, 1986, the claimant employee filed a claim for Dr. Balduf's chiropractic treatment for services rendered from April 25, 1986, through May 5, 1986, in the amount of $180. On June 26, chiropractor Balduf wrote the carrier's adjustor, Ms. Brown, and advised her that on the date of the industrial accident claimant could hardly walk into the clinic, and that he had attended claimant all day long, since she could not ambulate. The chiropractor advised the adjustor that claimant was subsequently bed ridden, and that he saw her on April 27, 28, 30, and May 2, 1986, on an emergency basis while at home, in order to enable the claimant to go to the company doctor. Further, Dr. Balduf advised Ms. Brown that the claimant had elected to continue chiropractic treatment and that chiropractic treatment was providing more relief than that provided by the medical doctors. The claims adjuster responded by asserting that only Dr. DeCandido was authorized and that Dr. Balduf's bills would not be covered. The adjuster filed a notice to controvert the claim for chiropractic care, as being unauthorized medical care.
After seeing Dr. DeCandido two or three times per week and receiving physical therapy, the doctor referred claimant to Dr. Sullivan, an orthopedic physician, for a second opinion. Claimant was provided with examinations by two other orthopedic physicians, Dr. Smith and Dr. West, at the expense of the employer and carrier. The medical opinions varied, finding lumbar strain and degenerative disc disease. At no time did the employer and carrier ever authorize chiropractic care. Appellant testified that she had continued to obtain chiropractic treatment from Dr. Balduf while seeing the authorized physicians, because she obtained relief and felt she was getting better.
At the final hearing on the merits of the claim, the deputy found that Dr. Balduf was not authorized, and therefore the past bills of Dr. Balduf totalling approximately $2700 were not the responsibility of the employer and carrier. The deputy found that claimant voluntarily chose to go to an unauthorized doctor, and he rejected claimant's testimony that she had to be treated by Dr. Balduf initially. The deputy found that the relief claimant obtained from Dr. Balduf's treatment was very temporary and that no apparent lasting progress was evident. The deputy determined that the authorized physician Dr. James West, M.D., who suggested an exercise and back strengthening program, should continue to be the authorized physician. The deputy therefore denied the claim for past and future care by chiropractor Balduf.
The employer and carrier argue that claimant willfully and intentionally disobeyed and disregarded the long standing company policy which required all injured employees to initially see Dr. DeCandido, and because of that, she is not entitled to an award of past chiropractic care. This point raises the issue of what impact, if any, a company's policy has on the statutory rights and obligations of the employer and carrier and of the claimant, regarding coverage under the worker's compensation act.
It is undisputed that once injured, claimant ignored the company policy, which required that she first see the company doctor. Claimant testified that she did not need help walking or driving when she left the building, and assumed she would be back in an hour to resume working. Although she told her supervisor she was going to see her chiropractor, the record does not show that she afforded the employer a reasonable opportunity to authorize a chiropractor in lieu of the company doctor. Certainly, had claimant followed company policy, she would not have immediately placed herself in the office of an *40 unauthorized physician, where she subsequently had to be attended all day. We agree with the deputy commissioner that claimant's condition when she left the employer's office did not amount to an emergency.
As to point one, it is clear that the statute gives the initial right of selection of a treating physician to the employer and carrier. It, however, reserves to claimant the right to reject such selection, require another authorization, or to seek authorization by the deputy for a physician of claimant's choice. See Cal Kovens Construction v. Lott, 473 So.2d 249, 254 (Fla. 1st DCA 1985).
We agree with claimant that the employer's company policy does not alter the employer and carrier's obligation to provide chiropractic health care when it is desired and needed. We are also aware of the provisions of section 440.13(3), Florida Statutes, where it is stated: "[i]t is unlawful for any employer... to coerce a sick or injured employee in the selection of a physician ..." Claimant has the right to veto the employer and carrier's selection and compel the employer and carrier to authorize another selection. "[O]therwise, the guarantee against coercion contained in section 440.13(2) is made a mere sham." Cal Kovens at 254. But this right of the employee does not negate the employer's right to initially select an authorized physician or chiropractor.
Given the facts of this case, there was no medical emergency at the job site immediately after the injury; therefore, the deputy did not err by denying payment of bills from Balduf incurred when he initially treated claimant after the injury. The employer and carrier is not responsible for unauthorized treatment of a worker's compensation claimant, absent a medical emergency. See Ocean Manor Resort Hotel v. Garbalosa, 512 So.2d 256, 257 (Fla. 1st DCA 1987). Here there was no evidence that claimant began treatment with Dr. Balduf due to a medical emergency. The claimant's own testimony, and that of her supervisor, constituted competent substantial evidence to support the finding that there was no medical emergency which would justify payment of bills for initial treatment by an unauthorized physician. Therefore, we affirm the deputy's order with respect to point one.
As to point two, however, this court made clear in Kirkland v. Harold Pratt Paving, Inc., 518 So.2d 1320 (Fla. 1st DCA 1987), rev. den., 525 So.2d 878 (Fla. 1988), and Jackson v. Publix Supermarkets, Inc., 520 So.2d 50 (Fla. 1st DCA 1987), that once claimant specifies to the employer and carrier that she desires chiropractic treatment, the employer and carrier must provide chiropractic care or obtain a ruling that such care was not in the claimant's best interest. The record reveals that the employer and carrier knew claimant desired chiropractic care after she commenced treatment with the company doctor, for the carrier received a letter dated June 26, 1986, from Dr. Balduf explaining claimant's decision to continue with chiropractic care. On July 10, 1986, the carrier responded only that Dr. Balduf would not be authorized, and no alternative, authorized chiropractor was suggested. The record reveals that even the company's vice president could not explain why a chiropractor was not authorized upon claimant's request to seek chiropractic treatment, once she had seen the company doctor as required. The employer and carrier are required to include a chiropractor in its list of health care providers pursuant to sections 440.13(2)(a); 440.13(1)(f), Florida Statutes. Failure to provide the care or obtain a deputy's ruling renders the employer and carrier responsible for unauthorized treatment pursuant to section 440.13(2), Florida Statutes, if it is found by the deputy to be reasonable and necessary. Jackson at 51.
The deputy explained in his order that the relief claimant obtained from Balduf was very temporary and there has been no lasting progress, even after fourteen months of treatment. However, to deny payment of all chiropractic bills required a finding that chiropractic treatment was neither "medically or reasonably necessary." Jackson at 51. The deputy's determination does not include that finding, therefore, there was error as a matter of law. See *41 Kirkland and Jackson. See also Ocean Manor Resort Hotel v. Garbalosa, 512 So.2d 256 (Fla. 1st DCA 1987). Consequently, we reverse on point two and as in Jackson, remand for a specific factual finding by the deputy regarding whether "chiropractic treatment in general was reasonable and necessary palliative care for claimant's compensable condition." Id. If such chiropractic care is found to have been reasonable and necessary for claimant's condition as it existed at that time, then claimant is entitled to an award of the costs incurred from such treatment as of the date that claimant made the employer and carrier aware that she desired such treatment, and gave them a reasonable time to authorize a chiropractor.
Finally, with respect to the deputy's denial of future chiropractic care challenged in point three, we acknowledge that "[a] deputy commissioner may at any time, for good cause shown, in the deputy commissioner's discretion, order a change in such remedial attention, care or attendance." Section 440.13(3), Florida Statutes. See Frito Lay Inc. v. Anderson, 453 So.2d 135 (Fla. 1st DCA 1984). However, as appellant points out, appellant was entitled to the opportunity to request treatment by a chiropractor, and at no time did the employer and carrier authorize chiropractic care. Therefore, we also reverse and remand on this point concerning future chiropractic care, so that the employer and carrier may be given the opportunity to authorize a chiropractor for claimant, or obtain an order justifying their refusal. Then the deputy may evaluate the authorized chiropractor's suggested treatment program, to determine whether it would provide meaningful benefit to claimant. In this way, claimant's right to request chiropractic care through her employer would be honored.
Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.
ERVIN and NIMMONS, JJ., concur.