573 So.2d 994 (1991)
Vincent COLACE, Appellant,
v.
HAMLET ESTATES, LTD. and Atlas General Agency, Appellees.
No. 89-2310.
District Court of Appeal of Florida, First District.
January 29, 1991.
*995 Renee R. Pelzman of Pelzman & Ruska, Coral Gables, for appellant.
Jill E. Jacobs of Miller, Kagan & Chait, Miami, for appellees.
PER CURIAM.
Claimant appeals a workers' compensation order denying his claim for payment of medical bills. Claimant contends the medical bills at issue were incurred as a result of the employer/carrier's failure to authorize treatment recommended by their independent medical consultant. We affirm in part and reverse in part.
On April 26, 1986, claimant sustained an industrial accident resulting in injury to his lower back, hip, and left leg. Initially, chiropractic treatment was authorized for claimant's injuries. Next, claimant was treated by Dr. Sherfen, an orthopedist, with therapy involving traction, heat, and massage. Subsequently, Dr. Sherfen advised claimant that he could do nothing more for him, and recommended that claimant seek treatment from another physician. The carrier refused to authorize the physician recommended by Dr. Sherfen.
On October 22, 1986, claimant filed a claim requesting consultations with one of two named orthopedists, one of three named neurosurgeons, and with a psychiatrist. In response, the carrier offered an orthopedic consultation with any one of six alternative physicians. Thereafter, the carrier authorized treatment with Dr. Silverstein, an orthopedist. When claimant's complaints of pain returned shortly after his release from hospitalization for traction, Dr. Silverstein administered a personality test to claimant, and subsequently *996 advised him that his problem was "all in his head." At that point, without prior notice to employer/carrier, claimant took his x-rays, hospital and doctors' reports, and myelogram to Dr. Jacobson, a neurosurgeon. On the basis of claimant's existing tests and medical reports, Dr. Jacobson diagnosed a disc/nerve involvement and offered claimant three options: doing nothing, injecting cortisone around the area as temporary relief, or surgery in an attempt to decompress the nerve root. Dr. Jacobson recommended surgery. Claimant's attorney transmitted Dr. Jacobson's diagnosis to employer/carrier, and attempted, unsuccessfully, to have Dr. Jacobson's proposed treatment authorized. Instead, the carrier by letter dated March 11, 1987, offered evaluation and treatment, this time by neurosurgeons Yates, Davis, or Gervin. Claimant elected to go forward with the surgery scheduled for March 16, 1987, rather than undergo another examination. When contacted by Dr. Jacobson's office and by the hospital, the carrier's adjuster advised that the carrier would not be responsible for claimant's hospitalization.
The surgery relieved claimant's leg pain, but did little to alleviate his back pain, for which physical therapy was prescribed. While in therapy, claimant reinjured his back; based upon a subsequent myelogram, Dr. Jacobson recommended a second surgery. After the adjuster received Dr. Jacobson's operative reports, he forwarded them to Dr. Silverstein, the authorized physician, and requested an opinion regarding claimant's condition. Authorization for the second surgery was refused. On May 29, 1987, the adjuster offered an independent medical examination with Dr. Gervin, Dr. Lesser, or Dr. Flaten. The second surgery, which had been scheduled prior to employer/carrier's offer of another examination, was performed on June 12, 1987. Dr. Jacobson's post-operative note of June 24, 1987, revealed that claimant had two distinct disc abnormalities, i.e., a degenerative disc at L5-S1 and a herniated disc at L4-5. The operation afforded claimant a fifty percent reduction in his overall back pain.
In a letter dated June 15, 1987, employer/carrier's attorney advised claimant's attorney that it had been impossible to coordinate an independent medical examination at the hospital where claimant had been admitted. The letter concluded with the statement that employer/carrier had "complied with all the requirements dictated by law by providing alternate medical care in this non-emergency admission," and characterized claimant's decision to proceed with the scheduled surgery "as a refusal of offered alternate care."
After the second surgery, claimant agreed to undergo an independent medical examination by Dr. Gervin, one of the physicians employer/carrier agreed to authorize. Apparently due to employer/carrier's reluctance to pay his fee in advance, an appointment was not made with Dr. Gervin until August 10, 1987. Dr. Gervin's examination report of that date indicated that following the two surgeries, claimant was reasonably well in terms of disc disease. Dr. Gervin recommended MRI testing, and if the test results were favorable, one month of back-building rehabilitation. Dr. Gervin's report also indicated that claimant might have sacroiliac inflammation, which could be treated with mild anti-inflammatories, although joint injection might prove necessary.
Employer/carrier did not authorize the treatment recommended by Dr. Gervin. On December 28, 1987, Dr. Gervin again recommended an MRI, a facet rhizotomy, and anti-inflammatory medication. On January 4, 1988, Dr. Gervin wrote to employer/carrier's attorney to advise that he agreed with Dr. Jacobson's latest recommendation that another MRI should be performed, and noted that he had made the same recommendation in connection with his December 28, 1987, evaluation. The rhizotomy was never authorized; the MRI was scheduled for January 25, 1988. Claimant decided to forego further surgery, and agreed to be treated by Dr. Yates, one of the physicians offered by employer/carrier. However, treatment, as opposed to an examination, was not authorized. The record reflects that as of May 24, 1988, no treatment had been rendered *997 to claimant by Dr. Yates, or by any other physician authorized by employer/carrier.
The judge of compensation claims found that the medical services provided by Dr. Jacobson and the medical treatment ordered by him at North Miami General Hospital, Northridge Hospital, and Victoria Hospital, were unauthorized, were not rendered in an emergency situation, and that employer/carrier provided alternate care. Consequently, the claim for payment of these medical bills was denied.
The applicable statute, section 440.13(2)(a) and (b), Florida Statutes (1983), provides in part:
(a) ... the employer shall furnish to the employee such medically necessary remedial treatment, care, and attendance by a health care provider and for such period as the nature of the injury or the process of recovery may require, ...
(b) If the employer fails to provide such treatment, care, and attendance after request by the injured employee, the employee may do so at the expense of the employer, the reasonableness and the necessity to be approved by a [judge of compensation claims]. The employee shall not be entitled to recover any amount personally expended for such treatment or service unless he has requested the employer to furnish the same and the employer has failed, refused, or neglected to do so or unless the nature of the injury required such treatment, nursing, and services and the employer or the superintendent or foreman thereof, having knowledge of such injury, has neglected to provide the same.
The general rule is that, in the absence of an emergency situation, "a claimant who has been offered alternative medical care may not unilaterally obtain treatment from an unauthorized physician and later obtain reimbursement from the E/C." Hillsborough County School Board v. Brown, 565 So.2d 867, 868 (Fla. 1st DCA 1990), and cases cited therein. Where alternative care has been offered, and the parties cannot agree on a treating physician, the claimant must seek a decision through the judge or risk paying the bill. Id., at 868; Chase v. Henkel & McCoy, 562 So.2d 831, 832 (Fla. 1st DCA 1990); Teimer v. Pixie Playmates, 532 So.2d 37, 40 (Fla. 1st DCA 1988) review denied, 539 So.2d 475 (Fla. 1989); Ocean Manor Resort Hotel v. Garbalosa, 512 So.2d 256, 257 (Fla. 1st DCA 1987). On the other hand, where the employee requests treatment for an industrial injury and the employer fails to provide treatment, the employee is entitled to obtain it at the expense of the employer, upon a finding by the judge that the treatment rendered was reasonable and necessary. Dubois Farms, Inc. v. Paul, 566 So.2d 923 (Fla. 1st DCA 1990); Lowry v. Jim Bassitts Auto and Claims Center, 566 So.2d 303 (Fla. 1st DCA 1990); Lindsey v. Urban, 559 So.2d 734 (Fla. 1st DCA 1990); McGehee v. Broward County Community College, 559 So.2d 368 (Fla. 1st DCA 1990); Thomas v. Commercial Carrier Corp., 529 So.2d 758, 760 (Fla. 1st DCA 1988).
Employer/carrier's conduct in this case prior to the first surgery was satisfactory. However, following the first surgery performed on claimant it was somewhat comparable to that which occurred in Dubois Farms, Inc. v. Paul, where the offered alternative care was clearly inappropriate and unacceptable. In this case, employer/carrier did not offer alternative treatment as such; instead, independent medical examinations were offered repeatedly, despite record evidence that claimant's condition necessitated further treatment. Even after being provided with the result of diagnostic tests and operative reports which established that the authorized physician misdiagnosed claimant's condition, employer/carrier refused to acknowledge any obligation to provide treatment.
This case presents a situation of a carrier operating strictly within the letter, but not the spirit, of the workers' compensation law. Although Dr. Gervin, the authorized independent medical examiner, implicitly recognized the reasonableness and necessity of the treatment rendered by Dr. Jacobson, the employer/carrier's resistance to the provision of actual treatment in this *998 case extended up until the final hearing. Although claimant acknowledged that Dr. Jacobson's treatment was not rendered on an emergency basis, after receipt of the postoperative reports which established the reasonable necessity for the surgery, it was incumbent upon employer/carrier to authorize treatment.
In a technical sense, employer/carrier responded appropriately to claimant's requests for additional treatment, by repeatedly offering evaluations by alternative physicians. Nevertheless, the practical result of employer/carrier's conduct following the first surgery was to place the suffering claimant in limbo insofar as actual treatment of his injury was concerned. While the carrier was not bound, under section 440.13, Florida Statutes, to provide treatment by a surgeon specified by the claimant, the offer of evaluation by a different physician was not an offer of equivalent treatment by a different doctor. The statute requires equivalent alternative care, and not merely an offer of alternative doctors who are authorized for evaluation only.
Accordingly, the denial of payment for medical expense incurred prior to June 12, 1987, the date of the second surgery, is affirmed. However, the denial of payment for medical expense incurred in connection with the surgery performed June 12, 1987, and subsequent medical care, is reversed and remanded. On remand, the judge of compensation claims is directed to order payment of the medical expense incurred in connection with the surgery performed June 12, 1987, and for all other treatment provided in connection with claimant's industrial injury after that date.
WENTWORTH and JOANOS, JJ., concur.
ALLEN, J., concurring in part and dissenting in part with opinion.
ALLEN, Judge, concurring in part and dissenting in part.
While I agree that the appellees were required to provide the treatment recommended by the authorized physician, Dr. Gervin, I cannot agree with the majority that the appellees were obligated to pay for the prior, non-emergency treatment provided by the unauthorized physician, Dr. Jacobson. It is undisputed that on March 11, 1987, the appellees authorized treatment by any one of three alternative neurosurgeons. The record does not indicate that the appellees later advised the appellant of any withdrawal of this authorization. The judge of compensation claims concluded that neither the appellees' refusal to authorize Dr. Jacobson to conduct the second surgical procedure, nor the appellees' request that the appellant submit to an examination by an authorized physician, amounted to a withdrawal of the appellees' offer of treatment by an authorized physician. It seems to me that this was an entirely reasonable conclusion.