659 So.2d 318 (1994)
TW SERVICES, INC. & GAB Business Services, Inc., Appellants,
v.
Donald N. ALDRICH, Appellee.
No. 93-4080.
District Court of Appeal of Florida, First District.
December 29, 1994.
*319 Larry Cangro of Matusek, McKnight, Poluse & Cangro, P.A., St. Petersburg, for appellants.
Robert W. Schoenfelder of Winn & Jorgensen, P.A., St. Petersburg, for appellee.
PER CURIAM.
The employer and servicing agent (E/SA) appeal an order of the judge of compensation claims (JCC) ordering that the E/SA pay for Claimant's past treatment with a psychologist and continue to authorize treatment with him. We reverse.
Appellants are TW Services, Inc., the Employer, and GAB Services, the Servicing Agent. Appellee is Donald N. Aldrich, Claimant. Claimant injured his neck and shoulder in a compensable accident on September 16, 1992 and the E/SA provided him with treatment for his physical injuries. Some time after the accident, Claimant visited his family physician complaining of psychological problems and his physician referred him to Dr. Hafling to be evaluated for possible depression. Claimant was evaluated by Dr. Hafling on March 4, 1993. Dr. Hafling did not personally contact the adjuster for GAB Services on March 4 for authorization to evaluate or treat Claimant, but he testified that that was his normal office procedure. According to the E/SA, Dr. Hafling never requested authorization to treat Claimant, but the adjuster informed Claimant's attorney on March 15, 1993 that Dr. Hafling was only authorized to evaluate Claimant. In April and May 1993, the E/SA contacted Claimant's attorney, reiterating that Dr. Hafling was only authorized to evaluate Claimant and offering Claimant psychological treatment with his choice of three professionals, two psychologists and one psychiatrist. On August 30, 1993, after Claimant had completed his physical therapy and still felt in need of psychological services, Claimant returned to Dr. Hafling for his first treatment session. Claimant also saw Dr. Hafling on September 9 and October 18, 1993.
A hearing on the merits was held before Judge Remsnyder on October 19, 1993, and an order was entered on November 4, 1993. On November 22, 1993, the JCC held a hearing on the E/SA's Motion for Rehearing/Clarification. Thereafter, the JCC vacated her former order and entered the order appealed from on November 29, 1993. The JCC ordered the E/SA to pay Dr. Hafling for his treatment of Claimant on August 30 and September 9, 1993 and to continue to authorize Dr. Hafling for psychological care as long as necessary. The JCC based this order upon her findings that (1) Dr. Hafling's treatment was reasonable and medically necessary; (2) Dr. Hafling's initial evaluation of *320 Claimant was not an Independent Medical Evaluation that would preclude Dr. Hafling from treating Claimant unless the E/SA agreed; (3) Dr. Hafling had established a satisfactory doctor/patient relationship with Claimant; (4) the E/SA was not justified in its position that Dr. Hafling was authorized to evaluate only; and (5) Dr. Hafling thought he had been authorized to evaluate and treat Claimant and the E/SA never told Dr. Hafling that he was not authorized to provide treatment. The JCC found that the adjuster was trying to circumvent section 440.13 by authorizing health care providers to perform "evaluations only" and then refusing to allow them to treat claimants.
The E/SA argue on appeal that the JCC erred in ordering them to pay Dr. Hafling's medical bills because he was never authorized to treat Claimant, he was merely authorized to perform an independent medical examination, and the E/SA offered Claimant psychological treatment as soon as they knew it was necessary. The E/SA also contend that Dr. Hafling could not have been authorized to treat Claimant because he was an independent medical examiner. Alternatively, the E/SA argue that the JCC erred in requiring them to pay Dr. Hafling's past bills because they were not timely filed with the Division. We agree with the E/SA that it should not have been ordered to pay Dr. Hafling's medical bills because he was never authorized and because the E/SA offered psychological treatment as soon as it was aware that it was needed.
Section 440.13, Florida Statutes (1991), sets forth the employer's and claimant's duties with regard to the provision of medical care and treatment. Section 440.13(2)(a) requires the employer to furnish the claimant with remedial treatment deemed to be medically necessary. Subsection (b) gives the employer the right to authorize a health care provider to conduct an "independent medical examination" (IME) under certain circumstances. It also provides: "The health care provider performing the independent medical examination shall not be the health care provider to provide the treatment or follow-up care, unless the carrier or self-insurer and the employee so agree or unless an emergency exists." Section 440.13(2)(d) further provides:
If the employer fails to provide such treatment, care and attendance after request by the injured employee, the employee may do so at the expense of the employer, the reasonableness and the necessity to be approved by a judge of compensation claims. The employee shall not be entitled to recover any amount personally expended for such treatment or service unless he has requested the employer to furnish the same and employer has failed, refused, or neglected to do so or unless the nature of the injury required such treatment, nursing, and services and the employer or the superintendent or foreman thereof, having knowledge of such injury, has neglected to provide the same.
The JCC's order construing these sections is confusing. It is not clear whether the JCC found that the E/SA authorized Dr. Hafling to treat Claimant as of his first visit or if the JCC believed she had the authority to authorize Dr. Hafling to treat Claimant's depression.[1] We find that the JCC erred in either scenario.
There is no competent substantial evidence (CSE) to support the JCC's finding that Dr. Hafling was authorized to treat Claimant. The adjuster for GAB Services, Alyse Netzer, testified that she had no record of any inquiry from Dr. Hafling's office requesting authorization at any time. According to Ms. Netzer, Dr. Hafling was only authorized to perform an evaluation of Claimant. Ms. Netzer said she conveyed this information to Claimant's attorney over the phone eleven days after Claimant's initial visit with Dr. Hafling. Even Claimant testified that one of the reasons he did not return to Dr. Hafling before August 1993 was because he had been told that the doctor wasn't "approved." In addition, Dr. Foreman, who *321 performed an IME on Claimant on October 14, 1993, reports that Claimant told him that the E/SA had only authorized an evaluation with Dr. Hafling, not treatment.
Dr. Hafling's testimony also demonstrates he was unsure of the type of authorization he received. Dr. Hafling testified that he never personally contacted GAB for authorization, but that his officer manager routinely contacts new patients' insurance companies and that be understood that authorization for Claimant was received. Specifically, Dr. Hafling testified that he did not know whether he was authorized to perform an IME on March 4, 1993 or whether he was authorized to evaluate and treat. When asked if he had been authorized to treat Claimant on August 30 and September 9, 1993, the doctor said he thought he had because he had received authority for the first visit and had never been told otherwise. Taken within the context of the entire deposition, it is clear Dr. Hafling did not actually know whether he had authority to treat Claimant. According to Dr. Hafling, he does not concern himself with the billing in his office  he leaves that to his office manager who was new and did not necessarily understand the difference between an IME and the authority to evaluate and treat. Finally, as the E/SA points out, when asked why Claimant did not return to him for six months, Dr. Hafling opined that it might have been because he wasn't authorized for treatment.
The JCC's decision that Dr. Hafling was authorized to treat Claimant seemed to be based on the doctor's testimony that he believed he had initially been authorized to evaluate and treat Claimant and on the fact that the adjuster never wrote to Dr. Hafling to tell him he was not authorized to provide treatment. However, even if Dr. Hafling did not know that he did not have the authority to treat Claimant, Claimant clearly knew before he returned to Dr. Hafling on August 30, 1993 to begin treatment. As mentioned earlier, the E/SA notified Claimant's attorney at least as early as May 19, 1993 that Dr. Hafling had only been authorized to evaluate Claimant and that the E/SA had arranged for Claimant to be evaluated and treated by any one of three other doctors. After that time, it was incumbent upon Claimant to seek a decision from the JCC before returning to Dr. Hafling for treatment. Colace v. Hamlet Estates, Ltd., 573 So.2d 994, 997 (Fla. 1st DCA 1991); Wackenhut Corp. v. Freilich, 464 So.2d 217, 218 (Fla. 1st DCA 1985); Pinellas County Sch. Bd. v. Fly, 393 So.2d 610, 611 (Fla. 1st DCA 1981).
In Colace, this Court pronounced the rule to be applied in situations such as this one: "The general rule is that, in the absence of an emergency situation, `a claimant who has been offered alternative medical care may not unilaterally obtain treatment from an unauthorized physician and later obtain reimbursement from the E/C.'" 573 So.2d at 997 (quoting Hillsborough County Sch. Bd. v. Brown, 565 So.2d 867, 868 (Fla. 1st DCA 1990)). The court admonished the claimant that "[w]here alternative care has been offered, and the parties cannot agree on a treating physician, the claimant must seek a decision through the judge or risk paying the bill." Id.
In Colace, the court affirmed the JCC's denial of payment for medical expenses claimant incurred for surgery that was not authorized by the E/C.[2] There, the claimant sought medical treatment from an unauthorized neurosurgeon, Dr. Jacobson, after his authorized physician opined that claimant's problems were "all in his head." Id. at 996. Dr. Jacobson recommended that Claimant undergo surgery, but the E/C refused to authorize it. Instead, it offered evaluation and treatment by one of three alternative neurosurgeons. Claimant elected to go forward with the surgery disallowed by the E/C anyway.
The situation here is similar, even though Dr. Hafling was initially authorized to evaluate Claimant and Dr. Jacobson was not. Here, Claimant sought psychological treatment on March 4, 1993, before requesting it. *322 Claimant's attorney requested psychological treatment for Claimant on March 15, 1993. The SA responded by authorizing Dr. Hafling for evaluation only. On April 29, 1993, the SA authorized Dr. Bowman to reevaluate and treat Claimant and later, on May 10, 1993, the E/SA offered treatment with either Dr. Smith or Dr. Forman. Thus, under Colace, it is obvious that the E/SA met its obligation to provide Claimant with psychological treatment soon after it became aware of his need for it. This is not a situation where the claimant is entitled to obtain treatment at the expense of his employer because the employer failed to provide him with treatment after he requested it. Claimant knew on May 19, 1993, that Dr. Hafling was not authorized to treat Claimant and that the E/SA contended that Dr. Hafling had not been authorized. Despite this knowledge, however, Claimant returned to Dr. Hafling for treatment on August 30, 1993. Thus, this Court has no choice but to reverse the JCC's award of past medical payments to Dr. Hafling. The Colace rule applies to this claimant because he at least knew that the parties had not agreed on a treating physician and that the E/SA had offered alternative care at the time he returned to Dr. Hafling for treatment. Thus, when Claimant visited Dr. Hafling on August 30, 1993, he risked paying the bill.
The JCC similarly erred if she intended to authorize Dr. Hafling to provide psychological treatment to Claimant. Section 440.13 gives the employer the right of initial selection of a physician. Orange County Sch. Bd. v. Ebanks, 608 So.2d 578 (Fla. 1st DCA 1992) (although it was not error for the JCC to order an evaluation as recommended by claimant's treating chiropractor, the judge erred when he authorized the treating physician to select the neurologist or neurosurgeon to perform the evaluation).
Appellants also contend that the JCC erred in ordering them to pay Dr. Hafling's bills because he failed to file them with the Division. In light of our reversal of the JCC's order, this issue is moot.
For the foregoing reasons, the JCC's order is REVERSED.
ERVIN and LAWRENCE, JJ., and SMITH, Senior Judge, concur.
NOTES
[1] In her order, the JCC states: "I find that the claimant should be authorized to continue treatment with Dr. Hafling." She also found that the E/SA was not justified in its position that Dr. Hafling was authorized to evaluate only and that Dr. Hafling's initial evaluation of Claimant was not an IME within the terms of section 440.13(2)(b).
[2] The court also reversed a denial of payment for medical expense incurred in connection with a second unauthorized surgery because the alternative care offered by the E/C was clearly inappropriate and unacceptable. 573 So.2d at 997. However, the E/C's actions there are not similar to the instant situation.