31 So.3d 798 (2009)
Marty CARMACK, Appellant,
v.
STATE of Florida, DEPARTMENT OF AGRICULTURE and Corvel Corporation, Appellees.
No. 1D09-0813.
District Court of Appeal of Florida, First District.
November 17, 2009.
Rehearing Denied March 17, 2010.
*799 Laurie Thrower Miles of Smith, Feddeler, Smith & Miles, P.A., Lakeland, and Richard W. Ervin, III, of Fox & Loquasto, P.A., Tallahassee, for Appellant.
John E. DuBose, Jr., of Keough & DuBose, P.A., Orlando, for Appellees.
HANKINSON, JAMES C., Associate Judge.
This workers' compensation appeal arises out of Claimant's injuries suffered while working for the Division of Forestry. Claimant requested treatment for injuries to his right leg and lower back and for mental and emotional difficulties. The Employer/Carrier (E/C) accepted the compensability of only the leg and back conditions. Claimant requested a referral for psychiatric treatment from the Carrier and, receiving no authorization, sought treatment on his own with a psychiatrist, Dr. Walker. At the hearing, the JCC ruled that the E/C was responsible for reimbursing Claimant the cost of Dr. Walker's treatment provided through the date of the final hearing, but the E/C was not required to provide Claimant with continued treatment by Dr. Walker. Rather, the E/C was entitled to select and authorize a psychiatrist of its choosing to provide ongoing psychiatric care.
Claimant raises two issues in this workers' compensation appeal: (1) whether the Judge of Compensation Claims (JCC) erred in raising an issue that was not litigated by the parties; and (2) whether the JCC erred in denying authorization for ongoing care with Dr. Walker. We affirm both issues.
In support of his first issue, Claimant argues the JCC erred because he relied on a case not cited by either party. The Employer/Carrier (E/C) responds that, while it did not cite the particular case relied upon by the JCC, the case supported the specific relief sought by the E/C.
The JCC is authorized to "do all things conformable to law which may be necessary to enable the judge effectively to discharge the duties of her or his office." § 440.33(1), Fla. Stat. (2008). Florida's appellate courts have repeatedly approved a trial judge's ability to conduct independent legal research. See Castella v. State, 959 So.2d 1285, 1288 (Fla. 4th DCA 2007) (taking no issue with trial judge's statement she conducted research and found two cases on point); Tarrant v. Jacoboni, 780 So.2d 344, 345 (Fla. 3d DCA 2001) (noting that "trial court may take a disqualification motion under advisement in order to perform legal research"); Mayer v. State, 523 So.2d 1171, 1173 (Fla. 2d DCA 1988) (taking no issue with trial judge's statement that she intended to conduct *800 further research before issuing ruling). Accordingly, the JCC did not err in relying on case law identified by his own independent research.
The second issue raised by Claimant has been touched upon by this court in the recent decisions in Butler v. Bay Center, 947 So.2d 570 (Fla. 1st DCA 2006), the case relied upon by the JCC, and Parodi v. Florida Contracting Co., 16 So.3d 958 (Fla. 1st DCA 2009). Simply put, does the E/C retain the right to control the selection of the future treating physician after the JCC determines the E/C wrongfully denied entitlement to treatment previously requested by the claimant?
Claimant argues this court's interpretation of section 440.13(2)(c), Florida Statutes (2005), in Butler that "the E/C is not required to authorize that physician [the one claimant obtained treatment with when the E/C failed to authorize the requested treatment] for the claimant [for future treatment]" is dicta and conflicts with other decisions of this court. 947 So.2d at 572. Claimant's argument fails to address the 2003 amendment to section 440.13(2)(c) whereby the Legislature inserted the term "initial" before the phrase "treatment and care." Rules of statutory construction require that when interpreting a statute, terms should be given their plain meaning. See Closet Maid v. Sykes, 763 So.2d 377, 381 (Fla. 1st DCA 2000). "[T]he primary and overriding consideration in statutory interpretation is that a statute should be construed and applied so as to give effect to the evident intent of the legislature." Deason v. Fla. Dep't of Corrs., 705 So.2d 1374, 1375 (Fla.1998) (quoting State v. Nunez, 368 So.2d 422, 423-24 (Fla. 3d DCA 1979)).
Section 440.13(2)(c) addresses only the situation whereby the employer fails "to provide initial treatment or care" (emphasis added). In such instances, an employee is entitled to obtain that "initial treatment at the expense of the employer." Id. (emphasis added). "Initial" is defined as "of or relating to the beginning; marking the commencement." Webster's Third New Int'l Dictionary 1163 (Unabridged 1967). The insertion of the word "initial" evinces the intent of the Legislature to restrict the application of this subsection to only the circumstances described thereinthe "beginning" treatment for a particular condition.
Nothing in this subsection requires the employer to accept the employee's selection for future care. Reference should instead be made to section 440.13 generally, which has long been interpreted to make clear that the employer controls the selection of the treating physicians.[1]See TW Servs., Inc. v. Aldrich, 659 So.2d 318, 322 (Fla. 1st DCA 1994) (reversing JCC's authorization of a specific doctor for future medical treatment because section 440.13 gives the employer the right to select treating physicians).
In Parodi, we made clear that "the JCC has the statutory authority [pursuant to section 440.13(2)(c)] to authorize a doctor for care provided during the period of wrongful denial." 16 So.3d at 962. The "period of wrongful denial" is that time period during which the employer fails to furnish the employee medical treatment and care which a JCC finds to be medically necessary. We now make equally clear that "the period of wrongful denial" ends when the JCC finds the employee entitled *801 to the previously denied medical treatment. The JCC did not err in denying future authorization of Dr. Walker and directing the E/C to select a physician to provide Claimant with psychiatric treatment and care.
AFFIRMED.
HAWKES, C.J., concurs; BENTON, J., dissents with opinion.
BENTON, J., dissenting.
The majority opinion states the issue on which I respectfully dissent from today's affirmance by asking this question:
[D]oes the E/C retain the right to control the selection of the future treating physician after the JCC determines the E/C wrongfully denied entitlement to treatment previously requested by the claimant?
Ante p. 800. Absent circumstances not present here, my answer is that the "future treating physician" should be the same as the past treating physician.
At issue is whether the employer or carrier should be allowed to disrupt an existing patient-physician relationshipof a kind deemed medically necessary on account of an industrial accidentwhen the injured employee wants to continue treatment with the same physician. Whether initially authorized by the employer, the carrier, orleft to his or her own devices upon the employer's and carrier's failure to meet their statutory obligationsthe injured employee, the "incumbent" physician should be allowed to continue to treat the injured employee.
When the employer accepts an injury as compensable and recognizes the treatment a claimant seeks for a compensable injury as medically necessary, it is for the employer or its insurance carrier to choose which certified health care provider to authorize. In those circumstances, "a certified health care provider ... must receive authorization from the carrier before providing treatment." § 440.13(3)(a), Fla. Stat. (2008). See City of Bartow v. Brewer, 896 So.2d 931, 933 (Fla. 1st DCA 2005) ("Section 440.13(2)(c), Florida Statutes, does not authorize the JCC to order treatment with a specific physician, where the E/C promptly offers qualified alternatives."); TW Servs., Inc. v. Aldrich, 659 So.2d 318, 320 (Fla. 1st DCA 1994) ("We agree with the E/SA that it should not have been ordered to pay Dr. Hafling's medical bills because he was never authorized and because the E/SA offered psychological treatment [by another provider] as soon as it was aware that it was needed.").
But the right to select which medical provider to authorize initially can be forfeited. That is why the judge of compensation claims in the present case ordered Dr. Walker's treatment reimbursed even though appellees never authorized the treatment. As we recently explained in Parodi v. Florida Contracting Co., 16 So.3d 958, 961 (Fla. 1st DCA 2009), the "employer's right to select and/or `authorize' doctors from whom an employee may receive treatment is concomitant with its affirmative duty to provide appropriate care at the appropriate time."
Thus, so long as the employer fulfills its duty, it retains the right to select and authorize the physicians to treat the injured worker. See Butler v. Bay Ctr., 947 So.2d 570, 572 (Fla. 1st DCA 2006). When an employer abandons its obligation to provide appropriate care, however, it likewise surrenders to the injured employee the right to select a physician and obtain treatment, provided the care is "compensable and medically necessary." § 440.13(2)(c), Fla. Stat. (2003).
Id. at 961-62. The employer in the present case did not fulfill its duty. It abandoned *802 its statutory obligation to provide Mr. Carmack appropriate care when it refused to authorize a psychiatrist to evaluate or treat him. Because the employer and carrier failed to furnish medically necessary remedial treatment, Mr. Carmack, as the injured employee, had to select a physician on his own in order to obtain treatment, treatment whichat this junctureno party disputes was medically necessary.
Like the judge of compensation claims, however, the majority opinion relies heavily on obiter dicta in Butler v. Bay Center/Chubb Insurance Co., 947 So.2d 570 (Fla. 1st DCA 2006), even though Butler differs dramatically from the present case: Butler filed a petition for benefits, requesting authorization for treatment with a specific pain management physician, even though the employer (or carrier on its behalf) had authorized an appointment with a different pain management physician. The Butler court held that because the employer or carrier therein stark contrast to appellees herehad timely offered medical care in response to the petition for benefits, the judge of compensation claims could not award authorization of the specific physician sought by Butler. Id. at 572. See also Aldrich, 659 So.2d at 322. Although not pertinent here, the Butler court also ruled that section 440.13(2)(f), Florida Statutes, did not authorize the employee to make a one-time "change" where the employee never even saw the initially authorized physician. Butler, 947 So.2d at 572-73.
Whether or when an employer or carrier could require a change of physicians over the injured employee's objection were not issues in Butler. On this question, we have said: "`[O]nce an injured employee establishes a satisfactory physician-patient relationship with an authorized physician, the e/c may not deauthorize that physician without the employee's prior agreement or without approval of a [JCC].... In this situation the focus should be on the question of why an authorized physician should no longer provide care, thereby severing an established physician-patient relationship.'[] (emphasis supplied)." City of Bartow, 896 So.2d at 933-34 (quoting Stuckey v. Eagle Pest Control Co., 531 So.2d 350, 351 (Fla. 1st DCA 1988)). In interpreting section 440.13, Florida Statutes, as it existed after July 1, 1990, but before the 1994 amendments took effect,[2] we acknowledged that "an E/C had the statutory right to unilaterally deauthorize a health care provider based on overutilization without prior JCC approval, but noted that the JCC still retained the authority to determine after the fact whether deauthorization had been in the claimant's best interests in terms of the claimant's continuing need for medical services." Terners of Miami Corp. v. Busot, 764 So.2d 701, 703 (Fla. 1st DCA 2000).
The current statutory basis for "de-authorization" appears in subsection *803 440.13(2)(d), which provides: "The carrier has the right to transfer the care of an injured employee from the attending health care provider if an independent medical examination determines that the employee is not making appropriate progress in recuperation." See Ch. 93-415, § 17, at 101, Laws of Fla. No such independent medical examination took place here.[3]
Subsection 440.13(2)(d) applies without regard to who initially selects the medical provider. Dr. Walker was "the attending health care provider" once he was chosen in conformity with subsection 440.13(2)(c). No statute authorizes disrupting the medically necessary therapy Mr. Carmack has been receiving from Dr. Walker. In this respect, the order under review is in error, and should be reversed.
NOTES
[1] In rendering this opinion we do not reach the issue of whether the JCC may order continued treatment with a particular physician when such care is found to be medically necessary based on the particular facts of the case; for example, the treatment provided is so specialized that few, if any, other physicians are qualified in that specialty area.
[2] Until July 1, 1990, section 440.13(2)(a) provided in pertinent part: "The carrier shall not deauthorize a health care provider furnished by the employer to provide remedial treatment, care, and attendance, without the agreement of the employer, unless a deputy commissioner determines that the deauthorization of the health care provider is in the best interests of the injured employee." § 440.13(2)(a), Fla. Stat. (1987). In 1989, the Legislature added language to this provision which specifically allowed the employer or its carrier to deauthorize a health care provider without prior approval from a judge of compensation claims based on a unilateral determination that the health care provider's services were being overutilized. See Ch. 89-289, § 10, at 1751, Laws of Fla. But the Legislature retained the language requiring the employer and carrier to obtain prior approval from a judge of compensation claims before deauthorizing one health care provider and transferring care to another provider in all other circumstances. See id.
[3] Even when an independent medical examination does support a change in providers, the judge of compensation claims has the final say. "While the statute at issue here may give the E/C the unilateral right to deauthorize and transfer care without prior JCC approval based solely on the opinion of a single IME physician, ... the JCC still has a role in determining, after a seemingly statutorily authorized unilateral deauthorization, whether the deauthorization was, in fact, in the claimant's best interests." Terners of Miami Corp. v. Busot, 764 So.2d 701, 703-04 (Fla. 1st DCA 2000).