BENTON, J.,
dissenting.
The majority opinion states the issue on which I respectfully dissent from today's affirmance by asking this question:
[D]oes the E/C retain the right to control the selection of the future treating physician after the JCC determines the E/C wrongfully denied entitlement to treatment previously requested by the claimant?
Ante p. 800. Absent circumstances not present here, my answer is that the “future treating physician” should be the same as the past treating physician.
At issue is whether the employer or carrier should be allowed to disrupt an existing patient-physician relationship — of a kind deemed medically necessary on account of an industrial accident — when the injured employee wants to continue treatment with the same physician. Whether initially authorized by the employer, the carrier, or — left to his or her own devices upon the employer’s and carrier’s failure to meet their statutory obligations — the injured employee, the “incumbent” physician should be allowed to continue to treat the injured employee.
When the employer accepts an injury as compensable and recognizes the treatment a claimant seeks for a compensable injury as medically necessary, it is for the employer or its insurance carrier to choose which certified health care provider to authorize. In those circumstances, “a certified health care provider ... must receive authorization from the carrier before providing treatment.” § 440.13(3)(a), Fla. Stat. (2008). See City of Bartow v. Brewer, 896 So.2d 931, 933 (Fla. 1st DCA 2005) (“Section 440.13(2)(c), Florida Statutes, does not authorize the JCC to order treatment with a specific physician, where the E/C promptly offers qualified alternatives.”); TW Servs., Inc. v. Aldrich, 659 So.2d 318, 320 (Fla. 1st DCA 1994) (“We agree with the E/SA that it should not have been ordered to pay Dr. Hafling’s medical bills because he was never authorized and because the E/SA offered psychological treatment [by another provider] as soon as it was aware that it was needed.”).
But the right to select which medical provider to authorize initially can be forfeited. That is why the judge of compensation claims in the present case ordered Dr. Walker’s treatment reimbursed even though appellees never authorized the treatment. As we recently explained in Parodi v. Florida Contracting Co., 16 So.3d 958, 961 (Fla. 1st DCA 2009), the “employer’s right to select and/or ‘authorize’ doctors from whom an employee may receive treatment is concomitant with its affirmative duty to provide appropriate care at the appropriate time.”
Thus, so long as the employer fulfills its duty, it retains the right to select and authorize the physicians to treat the injured worker. See Butler v. Bay Ctr., 947 So.2d 570, 572 (Fla. 1st DCA 2006). When an employer abandons its obligation to provide appropriate care, however, it likewise surrenders to the injured employee the right to select a physician and obtain treatment, provided the care is “compensable and medically necessary.” § 440.13(2)(c), Fla. Stat. (2003).
Id. at 961-62. The employer in the present case did not fulfill its duty. It aban *802 doned its statutory obligation to provide Mr. Carmack appropriate care when it refused to authorize a psychiatrist to evaluate or treat him. Because the employer and carrier failed to furnish medically necessary remedial treatment, Mr. Carmack, as the injured employee, had to select a physician on his own in order to obtain treatment, treatment which — at this juncture — no party disputes was medically necessary.
Like the judge of compensation claims, however, the majority opinion relies heavily on obiter dicta in Butler v. Bay Center/Chubb Insurance Co., 947 So.2d 570 (Fla. 1st DCA 2006), even though Butler differs dramatically from the present case: Butler filed a petition for benefits, requesting authorization for treatment with a specific pain management physician, even though the employer (or carrier on its behalf) had authorized an appointment with a different pain management physician. The Butler court held that because the employer or carrier there — in stark contrast to appellees here — had timely offered medical care in response to the petition for benefits, the judge of compensation claims could not award authorization of the specific physician sought by Butler. Id. at 572. See also Aldrich, 659 So.2d at 322. Although not pertinent here, the Butler court also ruled that section 440.13(2)(f), Florida Statutes, did not authorize the employee to make a one-time “change” where the employee never even saw the initially authorized physician. Butler, 947 So.2d at 572-73.
Whether or when an employer or carrier could require a change of physicians over the injured employee’s objection were not issues in Butler. On this question, we have said: “ ‘[OJnce an injured employee establishes a satisfactory physician-patient relationship with an authorized physician, the e/c may not deauthorize that physician without the employee’s prior agreement or without approval of a [JCC].... In this situation the focus should be on the question of why an authorized physician should no longer provide care, thereby severing an established physician-patient relationship.^ ] (emphasis supplied).” City of Bartow, 896 So.2d at 933-34 (quoting Stuckey v. Eagle Pest Control Co., 531 So.2d 350, 351 (Fla. 1st DCA 1988)). In interpreting section 440.13, Florida Statutes, as it existed after July 1, 1990, but before the 1994 amendments took effect,[2] we acknowledged that “an E/C had the statutory right to unilaterally deauthorize a health care provider based on overutilization without prior JCC approval, but noted that the JCC still retained the authority to determine after the fact whether deauthorization had been in the claimant’s best interests in terms of the claimant’s continuing need for medical services.” Terners of Miami Corp. v. Busot, 764 So.2d 701, 703 (Fla. 1st DCA 2000).
The current statutory basis for “de-au-thorization” appears in subsection *803 440.13(2)(d), which provides: “The carrier has the right to transfer the care of an injured employee from the attending health care provider if an independent medical examination determines that the employee is not making appropriate progress in recuperation.” See Ch. 93-415, § 17, at 101, Laws of Fla. No such independent medical examination took place here.[3]
Subsection 440.13(2)(d) applies without regard to who initially selects the medical provider. Dr. Walker was “the attending health care provider” once he was chosen in conformity with subsection 440.13(2)(c). No statute authorizes disrupting the medically necessary therapy Mr. Carmack has been receiving from Dr. Walker. In this respect, the order under review is in error, and should be reversed.

. Until July 1, 1990, section 440.13(2)(a) provided in pertinent part: "The carrier shall not deauthorize a health care provider furnished by the employer to provide remedial treatment, care, and attendance, without the agreement of the employer, unless a deputy commissioner determines that the deauthori-zation of the health care provider is in the best interests of the injured employee.” § 440.13(2)(a), Fla. Stat. (1987). In 1989, the Legislature added language to this provision which specifically allowed the employer or its carrier to deauthorize a health care provider without prior approval from a judge of compensation claims based on a unilateral determination that the health care provider's services were being overutilized. See Ch. 89-289, § 10, at 1751, Laws of Fla. But the Legislature retained the language requiring the employer and carrier to obtain prior approval from a judge of compensation claims before deauthorizing one health care provider and transferring care to another provider in all other circumstances. See id.

. Even when an independent medical examination does support a change in providers, the judge of compensation claims has the final say. "While the statute at issue here may give the E/C the unilateral right to deau-thorize and transfer care without prior JCC approval based solely on the opinion of a single IME physician, ... the JCC still has a role in determining, after a seemingly statutorily authorized unilateral deauthorization, whether the deauthorization was, in fact, in the claimant's best interests.” Terriers of Miami Corp. v. Busot, 764 So.2d 701, 703-04 (Fla. 1st DCA 2000).