764 So.2d 701 (2000)
TERNERS OF MIAMI CORP. and Stirling Cooke Ins. Co., Petitioners,
v.
Elisa BUSOT, Respondent.
No. 1D99-4690.
District Court of Appeal of Florida, First District.
June 19, 2000.
Robert L. Teitler of Walton, Lantaff, Schroeder & Carson, Miami, for petitioners.
Richard E. Zaldivar; Jay M. Levy, P.A., Miami, for respondent.
WOLF, J.
The issue before us is whether section 440.13(2)(d), Florida Statutes (1997), eliminates the role of the judge of compensation claims (JCC) in determining, after the fact, whether an employer/carrier's (E/C's) unilateral *702 deauthorization and transfer of care, accomplished in apparent accordance with the terms of the statute, was appropriate. We conclude that the statute does not eliminate the role of the JCC in such circumstances. We, therefore, deny the E/C's petition for certiorari relief.
In 1997, claimant developed a compensable medical condition in her wrists as a result of her employment as a leather seamstress for the employer. The E/C initially authorized Dr. Jorge Cabrera, an orthopedic surgeon and member of the carrier's authorized managed care network,[1] to treat claimant's condition. Dr. Cabrera performed two surgeries on claimant's wrists in 1998, with the first surgery in January of that year involving only her right wrist and the second surgery in April of that year involving only her left wrist. Claimant's symptoms with regard to her right wrist resolved following the surgical procedure to that wrist. When claimant's symptoms with regard to her left wrist did not resolve following the surgery to that wrist, Dr. Cabrera recommended that claimant undergo a repeat carpal tunnel decompression of her left wrist.
The E/C did not authorize Dr. Cabrera to perform the recommended second surgery on claimant's left wrist. Instead, the E/C requested that Dr. Lewis Eastlick, a surgeon specializing in hand surgery,[2] conduct an independent medical examination (IME) of claimant to assess whether claimant indeed required additional surgery. After Dr. Eastlick conducted his IME of claimant, he advised the E/C that, in his opinion, claimant was not making appropriate progress in recuperation under the care of Dr. Cabrera.[3]
The E/C later notified claimant that, pursuant to section 440.13(2)(d), Florida Statutes (1997), they were deauthorizing Dr. Cabrera and transferring claimant's care to Dr. Franklin Reyes because their IME physician, Dr. Eastlick, had "determined that claimant was not making appropriate progress in recuperation under the care of Dr. Cabrera." Claimant objected to the E/C's deauthorization of Dr. Cabrera and requested a hearing before the JCC to determine whether Dr. Cabrera should be deauthorized based on the opinion of Dr. Eastlick.
After an evidentiary hearing, the JCC determined that the E/C had improperly deauthorized Dr. Cabrera. In so doing, the JCC rejected the E/C's contention that section 440.13(2)(d), Florida Statutes (1997), divested the JCC of any role in determining whether a unilateral deauthorization, accomplished in apparent accordance with the statute's terms, had been in the best interests of the claimant.
In this proceeding, the E/C argues only that the JCC misinterpreted section 440.13(2)(d), Florida Statutes (1997) by concluding that the provision did not altogether eliminate the role of a JCC in determining, after the fact, the appropriateness of a unilateral deauthorization of a health care provider and transfer of care accomplished in accordance with the statute's provisions. Section 440.13(2)(d), Florida Statutes (1997) provides in pertinent part as follows:
The carrier has the right to transfer the care of an injured employee from the attending health care provider if an independent medical examination determines *703 that the employee is not making appropriate progress in recuperation.
This provision was enacted as part of the sweeping reforms to the Workers' Compensation Act made in 1994. See Ch. 93-415, § 17, at 101, Laws of Fla. Prior to this enactment, as claimant points out in her response, this court had interpreted section 440.13, Florida Statutes, as requiring the E/C, before any deauthorization of an existing treating physician and transfer of care could occur over a claimant's objection, to obtain an order from the JCC allowing the transfer or bear the burden of proving at a subsequent hearing before the JCC good cause for the unilateral transfer in care. See Cal Kovens Constr. v. Lott, 473 So.2d 249, 253 (Fla. 1st DCA 1985); see also Wolk v. Jaylen Homes, Inc., 593 So.2d 1058, 1060 (Fla. 1st DCA 1992); Stuckey v. Eagle Pest Control Co., Inc., 531 So.2d 350, 351 (Fla. 1st DCA 1988).
Section 440.13, Florida Statutes, as it existed prior to 1989, read in pertinent part as follows:
The carrier shall not deauthorize a health care provider furnished by the employer to provide remedial treatment, care, and attendance, without the agreement of the employer, unless a deputy commissioner determines that the deauthorization of the health care provider is in the best interests of the injured employee.
§ 440.13(2)(a), Fla. Stat. (1987)(emphasis added). In 1989, the legislature added language to this provision which specifically allowed the E/C to deauthorize a health care provider without prior approval from a JCC when the deauthorization was based on an in-house determination that the health care provider had engaged in overutilization. See Ch. 89-289, § 10, at 1751, Laws of Fla. The legislature, however, retained the language in the statute which required the E/C in all other circumstances to obtain prior approval from a JCC before deauthorizing a health care provider and transferring care to another physician. See id. In 1990, the legislature eliminated from section 440.13 the language emphasized above which had required prior JCC approval for deauthorization. See Ch. 90-201, § 18, at 923-924, Laws of Fla.
In interpreting section 440.13, Florida Statutes, as it existed after 1990 but before the 1994 amendments, this court acknowledged that an E/C had the statutory right to unilaterally deauthorize a health care provider based on overutilization without prior JCC approval, but noted that the JCC still retained the authority to determine after the fact whether deauthorization had been in the claimant's best interests in terms of the claimant's continuing need for medical services. See Furtick v. William Shults Contractor, 664 So.2d 288, 290 (Fla. 1st DCA 1995). In making this determination, the court in Furtick reiterated the principle set forth in Cal Kovens that "when such deauthorization is made over the claimant's objection the employer incurs the risk that the judge may subsequently find such deauthorization to be without good cause." Id. at 290 n. 2. Thus, despite the complete elimination of the statutory language which had required prior JCC approval for deauthorization, this court held that a JCC continued to have a role in determining after the fact whether a seemingly statutorily appropriate unilateral deauthorization had been in the best interests of the claimant in terms of the claimant's continuing need for medical treatment.
The enactment in 1994 of the E/C's "right to transfer the care of an injured employee from the attending health care provider if an independent medical examination determines that the employee is not making appropriate progress in recuperation," does not appear to have been materially different than the legislature's enactment in 1989 of the E/C's right to deauthorize a health care provider without prior JCC approval based on a determination of overutilization. While the statute at issue here may give the E/C the unilateral right to deauthorize and transfer care *704 without prior JCC approval based solely on the opinion of a single IME physician, it is not reasonable to interpret the provision, as the E/C in this case would have this court do, as eliminating the role of a JCC in determining after the fact the appropriateness of the deauthorization and transfer. As this court found in Furtick, the JCC still has a role in determining, after a seemingly statutorily authorized unilateral deauthorization, whether the deauthorization was, in fact, in the claimant's best interests. See Furtick, 664 So.2d at 290.
We find that the JCC's interpretation of section 440.13(2)(d), Florida Statutes (1997), did not constitute a departure from the essential requirements of law. We deny the E/C's petition for certiorari relief.
ERVIN and WEBSTER, JJ., concur.
NOTES
[1] Neither party has raised the issue of the JCC's authority to resolve the medical care dispute in this case given that it arose in the context of managed care.
[2] Although the E/C refers to Dr. Eastlick in their petition as an orthopedic surgeon, he specifically testified during his deposition that he was "not an orthopedic surgeon," but was only a surgeon specializing in hand surgery.
[3] Dr. Eastlick also questioned claimant's need for the second surgery to her left wrist; however, the E/C conceded both below and in this court that claimant does, in fact, require the repeat carpal tunnel decompression to her left wrist.