VAN NORTWICK, J.
In this workers’ compensation appeal, Maggie Avery, Claimant, argues that the Judge of Compensation Claims (JCC) erred in approving the deauthorization by the City of Coral Gables and Johns Eastern, appellees, jointly the Employer/Carrier (E/C), of Claimant’s two authorized treating physicians pursuant to section 440.13(2)(d), Florida Statutes (2011), based on the JCC’s finding that Claimant was not making “appropriate progress” in her recuperation. Because Claimant had reached maximum medical improvement (MMI) and was receiving only palliative care, section 440.13(2)(d) is inapplicable here. Accordingly, we agree that the JCC erred in approving the deauthorization and we reverse.
Background
Claimant, while working as a narcotics officer for the Employer, was involved in two industrial accidents: on January 27, 1993, when Claimant was exposed to a flash grenade; and on April 19, 1993, when Claimant was involved in a shooting. In 1996, the parties stipulated that Claimant had reached MMI and became permanently and totally disabled (PTD) as of August 19, 1994.
In 1994, Claimant began treating with Dr. Ramon Pino, a psychiatrist, who diagnosed Claimant with mood disorder, recurrent major depressive disorder — moderate severity with anxiety, insomnia, and post-traumatic stress disorder (PTSD). He prescribed Claimant medication for depression (Wellbutrin), pain medication (Percocet), a muscle relaxer (Skelaxin); and sleep medication (Ambien). In 2004, Dr. Pino changed his diagnosis to mood disorder and severe clinical depression. He has treated Claimant on a monthly basis since 2001.
In April 2001, Dr. Pino referred Claimant to Dr. Grant McDougall for psychotherapy. Claimant attended between one to four appointments per week with Dr. McDougall until November 2009 when Dr. McDougall decreased Claimant’s therapy sessions.
On May 4, 2009, the E/C advised that, due to overutilization concerns, Dr. Richard Greer, a psychiatrist, had been selected to perform an independent medical examination (IME) to assess Claimant’s progress. On June 1, 2009, Claimant underwent an IME with Dr. Greer, who diagnosed her with depressive disorder not otherwise specified. According to Dr. Greer “depressive disorder” is a catch-all term for people who deal with some degree of depression and some degree of anxiety. In his psychiatric report, Dr. Greer opined that Claimant’s treatment with Drs. Pino and McDougall was excessive and unwarranted, and he recommended only one visit with a physician every three months.
As a result of Dr. Greer’s findings, the E/C advised Claimant that her psychiatric care had been transferred from Drs. Pino and McDougall to Dr. Michael Amiel with whom an appointment was scheduled. On November 5, 2009, the E/C issued a notice of denial deauthorizing treatment with Drs. Pino and McDougall, under section 440.13(2)(d), Florida Statutes (2011), on the basis that Claimant was not making “appropriate progress.”
Final Hearing
On December 17, 2009, Claimant filed a petition for benefits (PFB) seeking contin *751 ued treatment with Drs. Pino and McDou-gall, costs, and attorney’s fees. The E/C denied continued treatment with Drs. Pino and McDougall and indicated that Dr. Amiel had been provided as Claimant’s alternate psychiatrist. The E/C further asserted that Claimant had not made appropriate progress under section 440.13(2)(c), Florida Statutes (2011), and that there was overutilization.
In the order on appeal, the JCC approved the deauthorization on the basis that Claimant had not made appropriate progress in recuperation under the treatment of Drs. Pino and McDougall and that the deauthorization and transfer of care to Dr. Amiel was appropriate and in Claimant’s best interest. The JCC accepted the opinions of Dr. Greer over those of Drs. Pino and McDougall, and found “continued and excessive treatment fostered a sense of dependency in the claimant frustrating appropriate progress and recuperation.” Dr. Greer testified that the appropriate mode of treatment for Claimant would have consisted of medication management once every three months, not the amount of therapy she has received. Dr. Greer opined that the overabundance of therapy has fostered a sense of dependency in Claimant. The E/C established that Claimant had five visits with Dr. Pino and twenty visits with Dr. McDougall from January 1, 2009, through November 5, 2009. Although Dr. Greer testified that Claimant should have made progress before the frequency and chronicity of the visits reached the point that it did, he further testified that he did not expect any additional improvement in Claimant’s condition. After the JCC denied Claimant’s motion for rehearing, Claimant timely appealed.
Analysis
Section 440.13(2)(d), Florida Statutes (2011), provides that “[t]he carrier has the right to transfer the care of an injured employee from the attending health care provider if an independent medical examination determines that the employee is not making appropriate progress in recuperation.” (Emphasis added). See State Attorney v. Johnson, 770 So.2d 187, 188 (Fla. 1st DCA 2000) (holding because section 440.13(2)(d) does not adversely affect parties’ substantive rights, its application is not governed by date of accident).
The issue presented here, which has not yet been addressed by this court, is whether section 440.13(2)(d) is applicable to a claimant who is post-MMI and receiving only palliative treatment. It is undisputed that Claimant reached MMI (the date after which no improvement to her condition could be reasonably anticipated) and became PTD as of August 19, 1994. The E/C then furnished to Claimant palliative treatment, provided by Dr. McDougall and Dr. Pino. Palliative treatment, by definition, is not designed to improve Claimant’s condition. What is disputed by Claimant is whether she was “in recuperation” for purposes of section 440.13(2)(d) upon reaching MMI and undergoing palliative care.
The date of MMI “means the date after which further recovery from, or lasting improvement to, an injury or disease can no longer reasonably be anticipated, based upon reasonable medical probability.” § 440.02(8), Fla. Stat. (1989). Palliative care, awarded post-MMI, is defined as non-curative medical services that mitigate the conditions, effects, or pain of injury. § 440.13(1)(n), Fla. Stat. (2011). Although this court has not defined “recuperation” in the workers’ compensation context, we have recognized periods of “recuperation” following both the date of MMI and a determination of PTD as a discrete period of time following a curative procedure necessitated by a compensable injury. See *752 Delgado v. LaQuinta Motor Inns, 457 So.2d 572, 574-75 (Fla. 1st DCA 1984) (recognizing period following hospitalization as “recuperative”); Lopez v. Nabisco Brands, Inc., 516 So.2d 993, 995 (Fla. 1st DCA 1987) (recognizing period of claimant’s treatment designed to improve condition and alleviate pain as period of recuperation); cf. Orange County Sch. Bd. v. Melman, 721 So.2d 1183, 1184 (Fla. 1st DCA 1998) (stating claimant’s palliative treatment did not constitute recuperation); see also City of Tampa v. Miyares, 430 So.2d 540, 541 (Fla. 1st DCA 1983) (recognizing curative medical treatment as recuperation). Thus, there is legal support for the proposition that a claimant who has reached MMI can have a period of recuperation thereafter.
A claimant who has reached MMI, however, cannot be “in recuperation,” as a matter of law, where the treatment being provided is not curative. In other words, in the absence of curative treatment necessitated by a compensable injury, section 440.13(2)(d) is inapplicable. The E/C cites, as support for its argument to the contrary, this court’s holding in Imprescia v. J.B. Sonnier, 600 So.2d 539, 540 (Fla. 1st DCA 1992). In Imprescia, the claimant challenged the JCC’s order deauthorizing his treating psychiatrist for future care and authorizing a different psychiatrist. Id. This court held there was competent substantial evidence (CSE) to support the JCC’s finding that palliative treatment by another psychiatrist would be in the claimant’s best interest. Id. Imprescia, however, is distinguishable from this case on both legal and factual grounds. Id. Legally, Imprescia was affirmed on the basis of section 440.13(3), Florida Statutes (1989) (“[A] judge of compensation claims may at any time, for good cause shown, in the judge of compensation claims’ discretion, order a change in such remedial attention, care, or attendance”) — which has since been repealed — and did not involve section 440.13(2)(d). Id. Factually, Imprescia did not involve a claimant who had reached MMI, had been accepted as PTD, and was undergoing palliative care. Id.
The E/C’s reliance upon this court’s holding in Terners of Miami Corp. v. Busot, 764 So.2d 701, 702 (Fla. 1st DCA 2000), is similarly misplaced. In Busot, the claimant’s authorized treating physician performed surgery on both of the claimant’s wrists. Id. at 702. Symptoms to the claimant’s left wrist did not resolve; consequently, her physician recommended a second surgery. Id. The E/C requested an IME with a surgeon specializing in hand surgery to confirm whether the claimant indeed required an additional surgery. Id. Because the IME physician opined that the claimant was not making appropriate progress in recuperation, the JCC determined that the deauthorization and subsequent transfer was improper. Id. In Busot, the only issue on appeal was whether the JCC’s role was eliminated under section 440.13(2)(d), or rather, whether the IME’s opinion regarding the appropriateness of the claimant’s progress was dispositive of the issue. Id. at 703. Conversely, here the issue on appeal is whether section 440.13(2)(d) is applicable as a matter of law after the date of MMI.
Here, claimant was receiving only palliative care and Dr. Greer testified that he did not expect any additional improvement in Claimant’s condition. This statement logically precludes an opinion that Claimant is not making “appropriate progress in recuperation.” Moreover, the JCC found that the treatment provided to Claimant was unwarranted and excessive. These findings are more in accordance with a utilization review analysis and do not address the question of whether Claimant had made appropriate progress *753 in her recuperation — the focus of the analysis under section 440.13(2)(d). Under these circumstances, where the E/C has concerns of overutilization, the proper remedy is for the E/C to obtain a determination of overutilization from the Department of Financial Services, Division of Worker’s Compensation, under section 440.18, Florida Statutes (2011). See § 440.13(11)(c), Fla. Stat. (2011) (providing Department with exclusive jurisdiction over overutilization); see also Wolk v. Jaylen Homes, Inc., 593 So.2d 1058 (Fla. 1st DCA 1992) (“Under the Act, it is the Division’s duty to ... resolve disputes concerning excessive treatment.”). Accordingly, the order on appeal is reversed and remanded for entry of an order consistent with this opinion.
REVERSED.
WOLF and LEWIS, JJ., concur.